**INTERSTATE MOTOR FREIGHT SYSTEM, a Michigan corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant,**

and

The Interstate Commerce Commission, Strickland Transportation Co., Inc., a Texas corporation, Byers Transportation Co., Inc., Middlewest Freightways, Inc., Orscheln Bros. Truck Lines, Inc., Toedebusch Transfer, Inc., and Pic-Walsh Freight Co., Intervenors.

**Civ. A. No. 5047.**

United States District Court
W. D. Michigan, S. D.

July 21, 1965.

Warner, Norcross & Judd, Grand Rapids, Mich., J. M. Neath, Jr., Grand Rapids, Mich., of counsel, for plaintiff Interstate Motor Freight System.

Harold D. Beaton, U. S. Atty., Grand Rapids, Mich., William H. Orrick, Jr., Asst. Atty. Gen., John H. D. Wigger, Dept. of Justice, Washington, D. C., for defendant United States.

Robert W. Ginnane, Gen. Counsel, Interstate Commerce Commission, Leonard S. Goodman, Asst. Gen. Counsel, Washington, D. C., for Interstate Commerce Commission.

W. T. Brunson, Oklahoma City, Okl., for Strickland Transportation Co., Inc.

Rebman, LaTourette & Gunn, St. Louis, Mo., G. M. Rebman, St. Louis, Mo., of counsel, Varnum, Riddering, Wierengo & Christenson, Grand Rapids, Mich., F. William Hutchinson, Grand Rapids, Mich., of counsel, for Byers Transportation Co., Inc., Middlewest Freightways, Inc., Orscheln Bros. Truck Lines, Inc., Toedebusch Transfer Inc., and Pic-Walsh Freight Co.

Before EDWARDS, Circuit Judge, KENT, Chief District Judge, and FOX, District Judge.

FOX, District Judge.

This is an action to set aside an order of the Interstate Commerce Commission in No. MC–F–8265, Interstate Motor Freight System-Purchases-Eaton Truck Line, Inc., denying plaintiff's application to purchase operating rights of Eaton Truck Line, Inc. The action is brought

in this judicial district to comply with 28 U.S.C. § 1398(a).[1]

Plaintiff Interstate Motor Freight System (hereafter termed "Interstate") conducts extensive operations as a motor carrier over a wide area of the continental United States. Its operating authority before leasing of the Eaton rights had permitted operations in both St. Louis and Kansas City, Missouri, but there was no authority to operate directly between those two cities.

Plaintiff's only operations between those points had been by an irregular route, which distance was greatly in excess of the straight-line distance between them. Thus, plaintiff had been forced to either carry shipments over this circuitous, irregular route, or interline its freight with other carriers at either of the two cities in question.

Eaton Truck Line, Inc. did have regular route authority from Kansas City to St. Louis and irregular route authority from St. Louis westward to points in Henry County, Missouri.[2]

In October 1962, Interstate applied under Section 5 of the Interstate Commerce Act, 49 U.S.C. § 5, for authority to purchase the operating rights of Eaton and for temporary authority to operate under said rights pending a final determination of the application.

The temporary authority was granted November 1, 1962, and Interstate commenced operations thereunder on November 26, 1962. Hearings were held in March and September of 1963 before a hearing examiner of the Interstate Commerce Commission. The proposed purchase was protested by nine competing motor carriers, and Interstate introduced a number of shippers to testify in support of the application to purchase.

The examiner's report and order were served March 6, 1964. He found that the purchase price was not excessive, that Interstate was financially able to make the purchase without increasing its charges, that the proposed transaction would not adversely affect carrier employees, and, by implication, that no dormancy of rights was involved in the proposed transfer. However, he recommended a denial of the purchase for the following reasons:

(1) Interstate was using and intended to use the Eaton irregular route authority between St. Louis and points westward to link two of its regular routes, contrary to established Interstate Commerce Commission policies.

(2) A substantially duplicate authority had already been created by Eaton's sale of its intrastate rights to another carrier, which intended to conduct interstate operations over said routes and had in fact filed notice with the Interstate Commerce Commission of intent to do so.

(3) Interstate's operation would render much of the traffic of Eaton's competitors vulnerable to new and extreme diversion.

The examiner found that the proposed purchase was not in the public interest and therefore should not be approved.

---

1. Interstate Commerce Commission's orders
   Except as otherwise provided by law, any civil action to enforce, suspend or set aside in whole or in part an order of the Interstate Commerce Commission shall be brought only in the judicial district wherein is the residence or principal office of any of the parties bringing such action.

2. Eaton's certificate authorizes in general the transportation of general commodities, with exceptions, *over regular routes between* Kansas City and Sedalia, Mo., serving a number of specified intermediate points and territories including Garden City, Mo.; and *from* Garden City *to* St. Louis, Mo., serving specified intermediate and off-route points. Over *irregular routes*, Eaton's certificate authorizes the transportation of general commodities, with exceptions, *from* National Stock Yards and East St. Louis, Ill., *to* a portion of Henry County, Mo., which it also serves under its regular route authority, thus affording the connection to Kansas City. (Footnote omitted.)
   (Report and order of Hearing Examiner in No. MC-F-8265, Interstate Motor Freight System-Purchase-Eaton Truck Line, Inc.) (Pp. 3-4)

Interstate filed exceptions and a petition for rehearing or further hearing. A stay order was issued by the Interstate Commerce Commission, but by final order served February 11, 1965, the Commission denied that petition, and adopted the findings of the examiner without further discussion of the merits.

The effective date of the Commission's order was to have been May 12, 1965, at which time Interstate's temporary operation was to have been terminated.

On April 19, 1965, Strickland Transportation Co., Inc. (intervenor herein) filed an application with the Commission to purchase these same rights of Eaton, and at the same time applied for a temporary lease of Eaton's routes.

Temporary authority was granted to Strickland by the Commission order of May 5, 1965, served May 11, 1965.

Strickland is apparently a carrier whose operations would pose a threat to competition comparable in many respects to that of Interstate. With this in mind, in any event, plaintiff decided to seek judicial review of the Commission's order denying its purchase application, and filed the present complaint on May 10, 1965.

On the following day a temporary restraining order was issued, and at the hearing held May 17, 1965, counsel for the Commission requested that such order be vacated. It was instead continued until a three-judge court could be convened in accordance with 28 U.S.C. § 2325.[3]

On June 2, 1965, the present panel granted a preliminary injunction. We now consider the merits of plaintiff's request for a permanent injunction.

■ It is axiomatic to state that the scope of review of an administrative order or ruling is limited, and agency findings of fact are conclusive unless unsupported by substantial evidence. See, for example, Interstate Commerce Com-

mission v. Union Pacific R. Co., 222 U.S. 541, 32 S.Ct. 108, 56 L.Ed. 308; Swift & Co. v. United States, 343 U.S. 373, 72 S.Ct. 716, 96 L.Ed. 1008.

■ The Administrative Procedure Act, in 5 U.S.C. § 1009(a), specifically lists substantial evidence as a *sine qua non* of an agency decision.

"Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Boston & M. R. R. v. United States, D.C., 208 F.Supp. 661, aff'd 371 U.S. 26, 83 S.Ct. 117, 9 L.Ed.2d 95.

It is also more than a mere scintilla, and must afford a substantial basis of fact from which the fact in issue can be inferred, and therefore must do more than merely create a suspicion of the existence of the fact or facts to be established. General Motors Corp. v. United States, D.C., 207 F.Supp. 641; Hickey v. Celebrezze, D.C., 229 F.Supp. 5.

■ "The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286–287, 54 S.Ct. 692, 694, 78 L.Ed. 1260.

However, this does not mean that it is merely the function of the courts to search the records for evidence which in and of itself justifies the administrative decision. "Substantial evidence" must be determined with a full consideration of contradictory evidence, or evidence from which conflicting inferences could be drawn. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

In discussing the Administrative Procedure Act, 5 U.S.C. § 1009(e), Mr. Justice Frankfurter made the following observation:

"Congress has merely made it clear that a reviewing court is not

---

3. Injunction; three-judge court required. An interlocutory or permanent injunction restraining the enforcement, operation or execution, in whole or in part, of any order of the Interstate Commerce Commis-

sion shall not be granted unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.

barred from setting aside a Board decision *when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view."* Id. at 340 U.S. 488, 71 S.Ct. 465. (Emphasis supplied.)

■ This court does not find substantial evidence to support the order of the Commission.

■ The first of the hearing examiner's findings is rendered insubstantial by the Commission's order of June 22, 1965, denying Interstate's petition to convert the irregular part of Eaton's routes to regular routes. In the order the Commission stated that granting the authority sought "would not materially affect the outstanding decision" on the purchase application, thus virtually admitting that this factor was not substantial in reaching its primary decision.

■ The examiner's second finding, that there would be a duplication of operating authority where formerly there had been only one operation, likewise suffers from a fatal deficiency. There is some question concerning the jurisdiction of this court to consider the facts of the Strickland application in deciding the Interstate matter, despite Strickland's appearance as an intervenor herein. However, although limited statutorily in the extent of relief we may grant, this court nonetheless is acting in its historical equity jurisdiction in considering an injunctive remedy, and should therefore be able to view this situation in its entirety, including the related matter of the Strickland application.

But even assuming that we may not consider the statement in the Commission's brief that Eaton had no viable interstate rights to transfer, and the fact that the Commission later granted temporary authority under those same rights to Strickland under its application, there is ample basis for holding that the second finding is unsupported by substantial evidence.

The examiner stated in his report that "substantially the same routes" were covered by the intrastate rights which Apex Fast Feight had purchased from Eaton. From an examination of the record and exhibits in MC-F-8411, Byers Transportation, Inc., et al. v. Eaton Truck Lines, Inc., et al., it is apparent that there was no authority under the intrastate certificate of Eaton to serve between St. Louis and Kansas City. The Public Service Commission of the State of Missouri made this specific determination at pp. 6-7 of Case No. T-19, 1937.[4]

The interstate rights which are the subject of this controversy allow such service.

■ Thus, there is a *prima facie* uncontradicted showing that there is no substantial duplication of routes, and the second finding upon which the order is based must be set aside.

The third and final reason, and apparently the one most heavily relied upon to support the order is that approval of this purchase will result in a diversion of traffic from protestants and cause competitive harm.

The testimony of protestants on competitive harm is speculative and inconclusive. None introduced statements or reports to show their financial or operating

4. In order to eliminate any misunderstanding as to what the authority, when joined, will or will not allow insofar as the service between points is concerned, the Commission believes that a clear restriction should be included in the surviving authority, Paul M. Eaton, Jr., eliminating service between St. Louis, Sedalia, and Kansas City, and between Kansas City and Harrisonville. Such a restriction was a part of the original authority, and as there is nothing to indicate that the authority ever was operated under any but common control and management, it should remain until public convenience and necessity demands its removal. There has been no showing of public convenience and necessity to serve between these points in this case; no public witnesses were called, and the Commission is of the opinion and finds that the removal of the restriction can be accomplished only following a hearing which proves public convenience and necessity.

conditions prior to the time Interstate began temporary operation as opposed to after the time Interstate began operating over the Eaton routes. On cross-examination, counsel for Interstate brought out the fact that either operating ratio, operating revenue or tonnage showed sizeable increases in the cases of five of the protestants. The remaining protestants were unable to state what their situations were.

The testimony of shippers in support of the application of Interstate cannot be said to be of sufficient character to justify a finding of substantial evidence adequate to support a conclusion.

The examiner relied on testimony indicating the proposed use which some of the shippers would make of Interstate's services if the purchase were granted. Aside from the apparently small number of such shippers, their testimony reveals that they largely used carriers other than protestants, so that any traffic which Interstate was able to divert in this regard would not be diverted from protestants. The amount which would be diverted from protestants in any event is not clear, and does not appear either in the testimony of the hearing or in the examiner's report.

When coupled with the complete failure of protestants to introduce any positive facts tending to show in a substantial way the effect which the Interstate operation has had or will have on their operations, this court is left with no other alternative than to find that the evidence does not create a substantial basis in fact for the conclusion drawn by the examiner.

The order of the Commission denying the application of plaintiff to purchase the operating rights of Eaton Truck Line, Inc. is hereby set aside as to findings (1) and (2) of the examiner, and the case is remanded to the Interstate Commerce Commission for further hearing on the question of competition and diversion of traffic.

An order may be submitted accordingly.