**ARROW TRANSPORTATION CO., Inc., et al.**

v.

**UNITED STATES of America and Interstate Commerce Commission.**

**Civ. A. No. 4004.**

United States District Court
D. Rhode Island.
June 17, 1969.
As Amended July 7, 1969.

---

Morris J. Levin, Washington, D. C., William Biederman, New York City, and Max Schwartz, Brooklyn, N. Y., for plaintiffs, Arrow Transportation Co., Inc., Long Island Motor Haulage Corp., P.A.L. Transportation Co., Inc.

Richard W. McLaren, Asst. Atty. Gen., John H. D. Wigger, Atty., Department of Justice, Washington, D. C., and Edward P. Gallogly, U. S. Atty., District of Rhode Island, Providence, R. I., for defendant, United States of America.

Robert W. Ginnane, General Counsel, Philip W. Getts and Jerome Nelson, Attys., Interstate Commerce Commission, Washington, D. C., for defendant, Interstate Commission Commission.

William C. Hillman, Providence, R. I., for Intervening defendant, Rupp-Southern Tier Freight Lines, Inc., et al.

## OPINION

Before McENTEE, Circuit Judge. PETTINE and BOWNES, District Judges.

### Statement of the Case

PETTINE, District Judge.

This is an action to set aside and annul orders of the Interstate Commerce Commission in various proceedings re-

ported as Docket No. MC–F–9642, Long Island Motor Haulage Corp.—Purchase —P.A.L. Transportation Co., Inc., etc., 104 M.C.C. 718 (1968).

Jurisdiction is conferred upon this court by 28 U.S.C. Sections 1336, 1398, 2284, 2321–2325 and Section 10 of the Administrative Procedure Act, 5 U.S.C. Sections 701–706. Plaintiffs have standing to maintain this action by virtue of Section 205(g) of the Interstate Commerce Act 49 U.S.C. Section 305(g).

The case involves the attempted sale by P.A.L. Transportation Co., Inc. (P.A.L.) of its rights to operate as a common carrier to plaintiffs Long Island Motor Haulage Corp. (Haulage) and Arrow Transportation Co., Inc. (Arrow). Authority to consummate the sale was denied by the Commission.

P.A.L. holds certain rights to operate as a common carrier in interstate and foreign commerce. Early in 1966, P.A.L.'s financial difficulties forced it to cease operations and to file a petition in bankruptcy. Thereafter the referee negotiated a sale of the operating rights to AMY Transportation Corp. (AMY). The sale was approved by an order of the bankruptcy court on March 23, 1966, after which P.A.L. conducted no further operations. AMY simultaneously entered into a lease agreement with P.A.L. to operate under these rights, pending Commission approval of the transfer, but never consummated the sale due to financial troubles of its own.

Thereupon, a second judicial sale of the rights was conducted on or about November 30, 1966, with plaintiffs Arrow and Haulage emerging as successful bidders. (Haulage was the proposed vendee, with Arrow agreeing to purchase a portion of the rights from Haulage). An order of the court approving this sale was entered in December of 1966. In March of 1967, Arrow and Haulage commenced operations pursuant to grants of temporary authority from the Commission.

On January 16, 1967, applications were filed with the Commission seeking approval of the transfer under Section 5 of the Interstate Commerce Act. The proceedings were heard by a hearing examiner who subsequently retired from government service. A report and recommended order, written by a second examiner, was adopted by the Commission on July 1, 1968.

The Commission found that P.A.L.'s rights were dormant after the sale to AMY in March of 1966. The Commission further found that plaintiffs proved no need for reinstitution of these services or for new operating authority. The applications were therefore denied. The action at bar was filed in September of 1968.

### Statutes Involved

Section 5(2) (a) of the Interstate Commerce Act (49 U.S.C. § 5(2) (a)) provides, *inter alia* that

> it shall be lawful, with the approval and authorization of the Commission, as provided in subdivision (b)—
>
> * * * For any carrier, or two or more carriers jointly, to purchase * * * the properties, or any part thereof, of another;

Section 5(2) (b) of the Act provides for Commission approval of such transactions as "will be consistent with the public interest, * * *."

Section 206 of the Act (49 U.S.C. § 306) provides, *inter alia,* that

> * * * no common carrier by motor vehicle * * * shall engage in any interstate or foreign operation on any public highway, * * * unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations: * *."

Section 207 of the Act provides for issuance of such certificates by the Commission upon findings that "* * * the proposed service, * * * is or will be required by the present or future public convenience and necessity; * *."

Section 5 of the Administrative Procedure Act, 5 U.S.C. § 554, provides, *inter alia:*

> (a) This section applies * * * in every case of adjudication required by statute to be determined on the record after opportunity for hearing * *

> (d) The employee who presides at the reception. of evidence pursuant to section 556 of this title shall make the recommended decision or initial decision required by section 557 of this title, unless he becomes unavailable to the agency. * * *

Section 8 of the Administrative Procedure Act, 5 U.S.C. § 557, provides, *inter alia:*

> (a) This section applies * * * when a hearing is required to be conducted * * *.

> (c) Before a recommended, initial, or tentative decision, or a decision on agency review of the decision of subordinate employees, the parties are entitled to a reasonable opportunity to submit for the consideration of the employees participating in the decisions—

> (1) proposed findings and conclusions; or

> (2) exceptions to the decisions or recommended decisions of subordinate employees or to tentative agency decisions; and

> (3) supporting reasons for the exceptions or proposed findings and conclusions.

The record shall show the ruling on each finding, conclusion, or exemption presented. All decisions, including initial, recommended, and tentative decisions, are a part of the record and shall include a statement of—

> (A) findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record; and

> (B) the appropriate rule, order, sanction, relief, or denial thereof.

Section 10 of the Administrative Procedure Act, 5 U.S.C. § 706, provides, *inter alia:*

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

> (1) compel agency action unlawfully withheld or unreasonably delayed; and

> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—

>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

>> (B) contrary .to constitutional right, power, privilege, or immunity;

>> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

>> (D) without observance of procedure required by law;

>> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

>> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

The denial of the plaintiffs' application by the Commission was based on its findings that the operating rights sought to be transferred were dormant and that the plaintiffs proved no need for reinsti-

tution of such services or for new operating authority.

### Limited Scope of Judicial Review

 "It is well settled that the scope of judicial review of Commission orders is limited and well defined. In the absence of a finding that the agency's actions are arbitrary, capricious or an abuse of discretion or unsupported by substantial evidence, it cannot be set aside. The judicial function on review is fully met when it finds a rational basis for the Commission's conclusions."[1]

 The Commission has broad and sweeping discretion in a Section 5 proceeding which prohibits a court from substituting its judgment for that of the Commission.[2]

 These well established guiding principles certainly do not, however, convey complete autonomy, and the rationality of an agency's decision must encompass its fact findings, its interpretation of the pertinent law, and its application of the law to the facts as found. This case presents a problem with respect to the interpretation of the legal concept of "dormancy" and with its application to the facts of record.

### Dormancy in the Operation of P.A.L. Authority

 The bare statement of the law is not in dispute. In a Section 5 proceeding the Commission must, of course, be satisfied that the operating rights sought to be transferred were indeed in use and not dormant.[*] It is too well established to require citation that dormant rights cannot be sold. Allowance of such transfers would institute new services without a showing of public

need therefor in violation of the statutory standard and policy. A number of cases hold that it is the plaintiff's burden to prove by competent evidence to the satisfaction of the Commission that operations were in fact conducted during the period in question.[3] It is the government's reliance on these cases which the court questions, because the government seeks the across-the-board application of a definition outside the factual context of the case wherein it was propounded.

The government over simplifies the law in urging that the plaintiffs have failed to offer any probative evidence that AMY conducted actual operations under P.A.L. authority, that operations ceased, and concomitantly, that an intent to resume operations in the future has no bearing on the fact that operations in the past were dormant.

The defendants urge the acceptance of a rule which the Commission itself has stated cannot be rigidly applied. "Dormancy is not an inflexible concept but rather, it is one which must be evaluated in light of all surrounding circumstances."[4] In this vein, it becomes particularly significant to note that dormancy has never been applied to a temporary cessation of operations alone. In all the cases cited by the defendants in which dormancy was found and applications were denied, there were protestant carriers opposing the application, submitting evidence of their operations, and claiming adverse effects if the Commission authorized the new competitive service requested.

One could agree with the defendants on the reading of the holding of each case if the factual basis of the same were not considered. However, we can-

---

1. Short Line, Inc. v. United States, 290 F.Supp. 939, 941 (D.R.I.1968).

2. Alabama Highway Exp. v. United States, 241 F.Supp. 290, 296, fn. 14 (N.D.Ala., 1965), affirmed per curiam, 382 U.S. 106, 86 S.Ct. 255, 15 L.Ed.2d 190; Herrin Transp. Co. v. United States, 108 F.Supp. 89, 93 (E.D.La., 1952), affirmed per curiam, 344 U.S. 925, 73 S.Ct. 497, 97 L.Ed. 712.

3. Kings Van & Storage, Inc.-Purchase-Millard, 85 M.C.C. 110 (1960); Novick Transfer, Inc.-Purchase-Steinla Transportation Co., 85 M.C.C. 543 (1960); Atlas Truck Line, Inc.-Purchase-Macaulay, 87 M.C.C. 305 (1961); Fogarty Bros. Transfer, Inc.-Purchase-Transport Van Lines, 104 M.C.C. 665 (1968).

4. Moab Truck Center, Inc.-Purchase (Portion)-W. R. Hall, Trans., 104 M.C.C. 274, 277.

not ignore that in each case there were protestants who testified as to the existence, kind and availability of their services. Under such circumstances, the court agrees that the burden is then on the applicant to show that the services are inadequate. However, that is not the case before us. It is true that in Atlas Truck Line, Inc.—Purchase—Macaulay 87 M.C.C. 305 (1961) there were no protestants. However, the Commission did not base its denial of the application there on dormancy alone but rather on dormancy taken together with the financial inability of the purchaser to sustain the economic burden involved. In another case, dormancy was linked with intention to resume operations.

> "We are of the opinion that the facts meet the definition of dormancy set forth in the applicant's reply, namely, that operating rights become dormant when there is a cessation of operations coupled with the absence of any intention to resume. As contended by protestants, this finding is not dependent upon the time which has elapsed since the cessation, nor is it governed by the reasons which impelled the cessation. * * *" (AAA Trucking Corporation—Purchase—Garford Trucking, Inc., 75 M.C.C. 640, 643.) [5]

In reviewing the cases, this court finds dormancy to mean an abandonment or termination of services the reactivation of which will result in damages either to the public interest or to intervening or protesting carriers who conducted operations during the interruption of said services. This is a common sense rule compatible with the concern for the public interest that must be resolved.

In the instant case, if the applications are denied, no public or protestant interest will on this record be served. All the pertinent interests herein involved favor the plaintiffs, for the protestants offered no evidence which would demonstrate that approval of the applications would cause them any harm, whereas the plaintiffs, their shippers and connecting carriers and the public and private creditors of P.A.L. heavily weigh the scales on the plaintiffs' side.[6]

Restricting ourselves to the law of dormancy as interpreted and applied by the Commission, we rule that an improper standard of law has been improperly applied. It is hereby ordered that the Interstate Commerce Commission's decision and order dated July 1, 1968, be vacated and that this case be remanded to the Commission for such further proceedings as are required, and a decision applying the law as set forth in the opinion of this Court.

---

5. This court cannot agree with the defendants that a close reading of the case shows the definition was one urged by the applicants. Nor can this court accept that an alleged intent to resume operations, standing alone, is sufficient to excuse dormancy.

6. Interstate Motor Freight System v. United States, 243 F.Supp. 868 at 872.