**ATKINSON LINES, INC., and Transportation Service, Inc., Plaintiffs,**

v.

**UNITED STATES of America et al., Defendants.**

**No. C3 4314.**

United States District Court, S. D. Ohio, W. D.

Aug. 2, 1974.

A. Charles Tell, John P. McMahon, Columbus, Ohio, for Atkinson Lines, Inc. Transportation Service, Inc.

Peter M. Knowlton, Dayton, Ohio, for James H. Jackson, Receiver for Atkinson Lines, Inc.

Fritz R. Kahn, Gen. Counsel, Charles H. White, Jr., I. C. C., Washington, D. C., for I. C. C.

Thomas E. Kauper, Asst. Atty. Gen., Carl D. Lawson, Dept. of Justice, Washington, D. C., William W. Milligen, U. S. Atty., Columbus, Ohio, for the U. S.

Robert D. Schuler, Detroit, Mich., for Associated Truck Lines, Inc., Central Transport, Inc., Great Lakes Express Co., White Star Trucking, Inc.

M. E. Rothhaar, Esq. Columbus, Ohio, for Commercial Motor Freight, Inc.

Jack B. Josselson, Cincinnati, Ohio, for O.K. Trucking Co.

Before PECK, Circuit Judge, KINNEARY, Chief District Judge, and RUBIN, District Judge.

## OPINION

RUBIN, District Judge.

This matter came before the Court pursuant to a bill of complaint praying the Court to set aside certain orders of the Interstate Commerce Commission (hereinafter ICC). This is a three-judge federal court, properly convened and it has jurisdiction to review the actions of the ICC in this case, *see,* 28 U.S.C. §§ 1336, 1398, 2284 and 28 U.S.C. §§ 2321–2325. Pertinent provisions of the Administrative Procedure Act make it clear that the scope of the Court's review in this case will be very broad, *see,* 5 U.S.C. § 706. One matter this Court will concern itself with is whether the action of the ICC herein was supported by "substantial evidence," 5 U.S.C. § 706(2)(E), which means such evidence as a reasonable mind might accept as adequate to support a conclusion,

Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The substantial evidence standard, however, does not exhaust the scope of review in this Court, for there are other reasons for which agency action may be set aside, most notably when the agency has exceeded the scope of its statutory power or has abused its lawful discretion. *See, e. g.,* 5 U.S.C. § 706(2)(A) through (2)(F). The Court's role in review of agency action has often been characterized as "limited," Carl Subler Trucking, Inc. v. United States, 313 F.Supp. 971, at 979–980 (S.D.Ohio 1970). Universal Camera Corp. v. Labor Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). While that characterization counsels judicial restraint and deference to agency expertise, it must not be viewed as an abdication by the courts of an obligation to scrutinize carefully agency rulings and reverse those that do not comport in the due process or with fundamental justice.

Atkinson Lines, Inc. (hereinafter "Atkinson") was a general commodity interstate and intrastate motor carrier which held two Certificates of Registration issued by the ICC. Atkinson is presently under a receivership created by a state court. This action arises out of an ICC order which only partially allowed Transportation Services, Inc. (hereinafter "TSI") application to purchase a Certificate of Registration known as the "Bellefontaine" certificate.

▮ TSI was granted temporary authority by the ICC to operate its desired segments of Atkinson's rights under 49 U.S.C. § 310(a)(b). Pursuant to this Court's temporary restraining order, TSI is continuing to operate Atkinson's authority. The hearing examiner found that with regard to the Bellefontaine certificate, Atkinson's operations had allowed the certificate to become partially "dormant." The dormant portion is not transferable. The examiner thus recommended approval of the TSI-Atkinson transaction only insofar as the transfer of dormant rights was not involved.

Subsequently, the ICC itself adopted the findings and conclusions of the examiner as outlined above, and it has further denied petitions for reconsideration, reopening, and rehearing in this case. Pursuit of administrative remedies has been exhausted, the jurisdiction of this Court invoked, and this case is now properly here for review. Plaintiff in argument to this Court urged consideration of the so-called environmental issue contained in this litigation. Since that issue is irrelevant to the disposition the Court now makes, the question of timely assertion in the administrative proceedings need not be considered. The same is true with respect to certain passing references made in the briefs and on oral argument to an alleged "energy crisis."

The only legal issue presented to the Court with respect to the TSI purchase of the Bellefontaine certificate from Atkinson is whether the ICC properly applied its expertise and discretion in the denial of that portion of the certificate it deemed to be "dormant." Proper understanding of the meaning of the concept of dormancy is thus necessary to proper disposition of this part of the present case.

▮ Dormancy is an idea firmly rooted in the well-developed common law of the ICC. It is analogous to the equitable doctrine of delay in association with laches, sleeping or sitting on one's rights to the detriment of another, estoppel by conduct, and the familiar idea of inducing the reliance of another as a basis for liability in contract and, in some extenuated circumstances, even in tort. The truth of these assertions and the "kernel" of the dormancy concept were expressed quite well by the ICC itself in the case of King's Van and Storage, Inc.-Purchase-Millard, 75 M.C.C. 582 at 584–5 (1958) where it was held that:

"The transfer of dormant rights under section 5 may be approved as consistent with the public interest only upon a showing that there is a need for the service which may be established thereunder. *See* Cooper's Express,

Inc.,-Purchase-Fargo Trans., Inc. 70 M.C.C. 343. Where, as here, the selling carrier's operating rights are dormant, and no evidence has been adduced which would support a finding that the new service proposed by Vendee would serve any public need or that the shipping public has been without adequate transportation facilities since Vendor discontinued her operations, the fact that protestants are large, well-established, and successful carriers is not significant to a determination of the issues. The reason for the principle expressed in the case just cited is that the shipping public has been deprived of the discontinued transportation service, and other carriers which have been required to expand their carrier facilities in order to take up the vacuum created thereby are entitled to protection as to this traffic and the possible adverse effect revitalization of dormant operations may have upon them. *See* Roadway Express, Inc.-Purchase-Diamond State Motor Frt., Inc., 58 M.C.C. 185."

The "section 5" mentioned above is 49 U.S.C. § 5, the statute involved in this case. The above understanding of the dormancy concept has been restated many times by the ICC, *see, e. g.*, Ryder Truck Lines-Control and Merger-Harris Exp., 104 M.C.C. 328, at 337 (1967), Ruffalo's Trucking Svc.-Purchase-Worster, 104 M.C.C. 593, at 598 (1968), Moab Truck Center-Purchase-W. R. Hull Transp. and Storage, 101 M.C.C. 557, at 561 (1966), and has been accepted by the federal courts, *see, e. g.*, Arrow Transp. Co. v. United States, 300 F.Supp. 813, at 818 (D.R.I.1969).

Dormancy may occur under the following circumstances. A carrier applies for rights over a certain route and the rights are granted. Thereafter, instead of exercising these valuable rights, the carrier allows them to lie "dormant." He possesses the rights but the public gains no benefit therefrom because he is not using them, *i. e.*, he has discontinued service over the route in question either entirely or "substantially" (the so-called "substantiality test"). Other carriers in the area thus acquire a sound factual basis which will justify their operation over such routes. Later, the possessor of the now dormant rights (*e. g.*, Atkinson, in this case) seeks to sell them to another carrier. The ICC may, pursuant to the context of a 49 U.S.C. § 5 proceeding, prevent him from doing so. The conduct of the carrier having deprived the public of service and induced both the ICC and other carriers to take action to fill the void in service so created, operates as an estoppel to an assertion of its previously awarded rights.

■ Plaintiff's complaint that the ICC has not applied the concept of dormancy uniformly is without merit. Dormancy, by its very nature, is a legal conclusion and not a mere device. It cannot be applied with mechanical uniformity because its existence depends upon specific circumstances.

■■ The doctrine of whether substantial evidence supports the agency decision, *see*, Universal Camera Corp. v. NLRB, 340 U.S. 474, at 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951), is the Court's basic guide to decision in this matter, but the Court is also of course aware of its duty to scrutinize all aspects of the agency proceedings in order to decide whether it has acted fairly and within the proper legal framework, Nashua Motor Express, Inc. v. United States, 230 F.Supp. 646, at 650 (D.N.H.1964). TSI argues that the ICC has committed the error of not applying its own standards with reference to dormancy to the facts of the present case in a manner consistent with prior decisions of the ICC, *see*, H. C. & D. Moving & Storage Co. v. United States, 298 F.Supp. 746 (D.Hawaii 1969). TSI also argues that it has met the standards set out at 49 U.S.C. § 5, and that the ICC decision is contrary to the National Transportation Policy. In support of these assertions, plaintiff cites conclusory language from a multitude of cases. However, the most important characteristic of dormancy is that it is a factual issue to be determined from the varying circumstances of each case, Miami Transp. Co. of Ind.-Purchase-Strothman, 97 M.C.C. 600, at 608 (1964).

The examiner in this case found no evidence of traffic moving to Bellefontaine from the overwhelming number of likely locations in Ohio. He based this decision on Atkinson's own traffic survey. No evidence in the record showed that the ICC erred in concluding that the complete absence of any traffic moving to Bellefontaine from Ohio points (other than from four particular named locations) led to a finding of dormancy. Whatever else might constitute dormancy in a particular situation, a lack of use of the certificate must be "dormancy" under plain understanding of the English language. Partial dormancy was all the examiner found in this case with reference to the Bellefontaine certificate TSI has not adduced sufficient evidence, based on the facts of this case, to justify the Court in finding an arbitrary or abuse of agency action. Indeed, careful review of the entire administrative record in this case, and due consideration of the legal arguments attacking the agency proceedings leads this Court to conclude that the ICC properly applied its discretion and that substantial evidence in the record supports its decision as to the Bellefontaine certificate.