CEDAR RAPIDS STEEL TRANSPOR-
TATION, INC. and Lee Bros., Inc.,
Plaintiffs,

v.

The INTERSTATE COMMERCE COM-
MISSION and the United States of
America, Defendants.

No. C 74–31.

United States District Court,
N. D. Iowa,
Cedar Rapids Division.

April 1, 1975.

182

Robert E. Konchar, Cedar Rapids, Iowa, for plaintiffs.

James Kurth, Washington, D. C., for Interstate Commerce Commission.

Craig D. Warner, Cedar Rapids, Iowa, for defendant Midwest Emery.

Hugh M. Field, Waterloo, Iowa, for intervenor Kroblin Refrigerated Xpress, Inc.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

Before STEPHENSON, Circuit Judge, and McMANUS and HANSON, District Judges.

PER CURIAM:

This is an action by plaintiffs seeking to enjoin and set aside orders of the Interstate Commerce Commission (Commission) dated January 17, 1974 and April 3, 1974, denying plaintiffs' joint application under Section 5 of the Interstate Commerce Act, 49 U.S.C. § 5, and terminating plaintiff Cedar Rapids Steel Transportation, Inc.'s (CRST) temporary authority to lease the operating rights of plaintiff Lee Bros., Inc. (Lee). Pursuant to plaintiffs' motion filed herein on July 19, 1974, a temporary restraining order was issued restraining the Commission from enforcing its orders until review by this three-judge court. Certain interested

parties have been permitted to intervene and briefs have been filed by all parties.[1]

The following shall constitute this court's findings of fact and conclusions of law as contemplated by F.R.Civ.P. 52(a).

On October 28, 1971 plaintiffs applied in No. MC–F–11358 to the Commission for authority under Section 5 of the Act for purchase by CRST of a portion of Lee's operating authority, and under Section 210 of the Act, 49 U.S.C. § 310, for temporary authority for CRST to lease the operating rights involved pending determination of the Section 5 application. On November 15, 1971, the Commission granted temporary authority for a leasing arrangement between the parties for a period of 180 days and subsequently extended the temporary authority until a final determination of the Section 5 application could be made. The initial decision of the Commission's Administrative Law Judge, dated June 11, 1973, denied plaintiffs' application on the grounds that (1) part of the Lee operating authority sought to be transferred was dormant, and (2) CRST was financially unfit to complete the proposed transaction.

Plaintiffs then filed exceptions to the initial decision, supported by extra-record financial data. By order dated January 17, 1974, Division 3 of the Commission affirmed the initial decision and adopted it as its own. Plaintiffs then petitioned for further hearing of this matter and for reopening and consolidation of it with another Section 5 application of CRST. Division 3, acting in an appellate capacity, denied this petition by order dated April 3, 1974. Finally, plaintiffs filed a Petition to Reopen, for Further Hearing, and Request for Waiver of Rules and Postponement of Effective Date. This was rejected by the Commission except for the postponement of effective date, which was delayed until July 22, 1974.

Plaintiffs' complaint, also filed July 19, 1974, contends that the Commission's orders are arbitrary and capricious, based upon insufficient evidence, in excess of its authority and procedurally improper.

This court has jurisdiction pursuant to 28 U.S.C. §§ 1336, 2284, 2321–2325. The scope of review is governed by the Administrative Procedure Act, 5 U.S.C.A. § 706(2).

It is the court's view that under the standards of review applicable in this proceeding, the decision of the Commission must be affirmed. In reviewing the order involved here, the court's function is to insure that it is not arbitrary or capricious, is supported by substantial evidence in the light of the record considered as a whole and reached in accord with lawful procedure. 5 U.S.C.A. § 706(2)(A), (D), (E). Illinois Central R. Co. v. Norfolk & Western R. Co., 385 U.S. 57, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966). The court is not to substitute its own judgment for that of the Commission and the possibility of drawing two inconsistent conclusions from the evidence does not render the conclusion reasonably drawn by the administrative agency susceptible of reversal by the reviewing court. Consolo v. Federal Maritime Commission, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966). Messinger v. ICC, 300 F. Supp. 1336 (N.D.Iowa 1969).

Further, a presumption of proper performance of official duty attaches to Commission action, ICC v. City of Jersey City, 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420 (1943), and though it is rebuttable, the Supreme Court has said that "those who would overturn the Commission's judgment undertake 'the

---

1. Plaintiffs have requested oral argument in this case. However, the record made before the Commission and the parties' briefs fully and ably present the factual and legal contentions relevant to decision of this matter, and oral argument would therefore neither serve to advance usefully the litigants' positions nor aid the court in reaching its result.

heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences.'" Permian Basin Area Rate Cases, 390 U.S. 747, 88 S.Ct. 1344 20 L.Ed.2d 312 (1968). The context here is a Section 5 application, a matter especially appropriate for discretionary exercise of the Commission's expertise, McLean Trucking Co. v. United States, 321 U.S. 67, 64 S.Ct. 370, 88 L.Ed. 544 (1944), Movers' & Warehousemen's Association of America v. United States, 303 F.Supp. 563 (D.N.J.1969), and no such showing of injustice and lack of reasonableness has been made by plaintiffs.

■ With regard to the financial situation of CRST, the Commission properly concluded from the record that it was unfit to complete the transaction on the grounds, inter alia, that CRST (1) was overcapitalized, (2) had an excessive debt-equity ratio, (3) had insufficient working capital, (4) would be paying unreasonable fixed charges, and (5) faced great uncertainty as to future obligations from three other possible acquisitions and an unclear picture as to its cash flow. Plaintiffs contended before the Commission and contend now for interpretations of the financial data which present CRST's situation more favorably.

These contentions are unavailing, even giving effect where possible to plaintiffs' own figures. First, plaintiffs' figures for CRST capitalization as of 12/31/72, shown in plaintiffs' Exhibit E, still show a substantial overcapitalization. The overcapitalization shown there must, in the court's view, be increased by $52,024. This leasehold improvement amount is not includable as a capital asset because plaintiffs have not shown the requisite subsidiary-or-unrelated-company relationship between CRST and its lessor, as the Commission correctly concluded. Secondly, plaintiffs' figures, shown in their Exhibit F, for CRST's debt-equity ratio do present a more favorable picture as of 12/31/72 than do

those of the Administrative Law Judge which were accepted by the Commission. The debt-equity ratio shown by plaintiffs themselves is, however, still well above the 70% considered as an indication of financial instability by the Commission. Transportation Law Institute, 1969—Finance, Transfer and Securities Cases, Papers and Proceedings, Bobbs-Merrill Company, Inc. (1970). Thirdly, the necessary amount of working capital an acquiring carrier must have is a matter for the reasonable discretion of the Commission, to be judged in the light of the many and varied factors which may come into play in individual cases. It is a peculiarly inappropriate area for substitution of the court's judgment for that of the Commission's. Plaintiffs and the Commission agree that CRST had 16 days of working capital but disagree as to the sufficiency of this amount. Plaintiffs' arguments on this point refer to the average number of days of working capital possessed by carriers similar to CRST. This is not sufficient to justify reversal of the Commission's informed judgment on the particular position of CRST.

These factors, along with the others considered by the Commission and noted above, clearly provide the substantial evidence necessary to uphold the orders on the grounds of financial unfitness, and to refute plaintiffs' claims of arbitrariness and capriciousness. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). The data adduced by plaintiffs as to CRST's financial condition on 6/28/74 is not relevant here, since the administrative proceeding had effectively terminated prior to this time.

■ Procedurally, while this information may form the basis of a new Section 5 application by plaintiffs, it cannot be used to support reopening or further hearing of the old application. To allow such use would mean that a Commission order would virtually never become final, but would always be tentative and subject to administrative chal-

lenge if a petitioner, or for that matter an opponent, could allege some new evidentiary matter. Of course, the protracted administrative decision-making process must be sufficiently flexible to accommodate evidence which develops during the lengthy course of the proceedings. However, when evidence only becomes available, as here, almost a year subsequent to the initial decision and nearly six months after Commission affirmance and adoption of that decision, and thus cannot be fully presented to and argued before the Commission, that evidence cannot serve as grounds for judicial reversal, annulment or other adverse action on the administrative order. Plaintiffs' remedy is to institute a new application. Bowman Transp. v. Ark.-Best Freight System, 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974).

With regard to the dormancy issue, it is clear from the record that until plaintiffs produced, quite late in the game, additional freight bills the evidence clearly indicated that the Illinios-Pennsylvania authority was dormant. The Commission applies a test of *substantiality of previous carrier operation* in deciding dormancy questions. Home Transportation Co., Inc.—Purchase—Howard E. Clarkson and Everett C. Clarkson, 93 M.C.C. 509 (1964). New Dixie Lines, Inc.—Control—Jocie Motor Lines, Inc., 75 M.C.C. 659 (1958). There are no precise mathematical rules underlying this test; its application depends rather upon the experience and expertise of the Commission, and an applicant seeking transfer of authorization to transport general commodities, as here, bears a weightier burden than when only special commodities of a certain class are involved. C & H Transp. Co., Inc.—Purchase—Ferguson Trucking, 93 M.C.C. 741 (1954). Thus, even taking plaintiffs' additional freight bills into consideration, it is clear that the Com-

mission's dormancy decision is properly supported by the record and not arbitrary or capricious. Plaintiffs' contention that the Commission's finding that most of the Lee authority was active requires that the entirety of the authority be considered active is without merit. Atkinson Lines, Inc. v. United States, 381 F.Supp. 39 (S.D.Ohio 1974).

As for the Commission's refusal to grant further hearings in this matter after its adoption of the initial decision, there is quite obviously not the "clearest abuse of discretion" here which is necessary to overturn such a denial, United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1948), especially in view of the "rule that petitions for rehearings before administrative bodies are addressed to their own discretion." *Jersey City,* supra, 322 U.S. at 517, 64 S.Ct. at 1136. The Commission based its denial of further hearing on plaintiffs' noncompliance with its Rules of Practice, 49 C.F.R. § 1100.101(b), and thus the denial was not in this context arbitrary or capricious.

Plaintiffs' allegations that the Commission's orders exceeded its authority relate either to plaintiffs' quarrels with the Commission's interpretations of the facts or its denial of further hearings, rather than to any other specified infractions of statutory limitations or obligations and thus afford no ground of relief additional to those discussed above.

It is therefore

Ordered

The order of the Interstate Commerce Commission in Cedar Rapids Steel Transportation, Inc.—Purchase (Portion)—Lee Bros., Inc., No. MC–F–11358, is hereby affirmed; the Temporary Restraining Order issued herein July 19, 1974 is dissolved and plaintiffs' complaint is dismissed at their costs.