**HILT TRUCK LINE, INC., and West Suburban Motor Express, Inc., Petitioners-Appellants,**

**v.**

**UNITED STATES of America and Interstate Commerce Commission, Respondents-Appellees.**

No. 76–1371.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 21, 1976.

Decided Jan. 25, 1977.

James C. Hardman, Chicago, Ill., for petitioner-appellant.

Samuel K. Skinner, U. S. Atty., Chicago, Ill., Robert L. Thompson, I. C. C., Washington, D. C., Donald I. Baker, Asst. Atty. Gen., John J. Powers, III, Atty., Dept. of Justice, Washington, D. C., for respondents-appellees.

Before CLARK,* Associate Justice (Retired), SPRECHER and TONE, Circuit Judges.

PER CURIAM:

Hilt Truck Line, Inc. (Hilt) appeals from an order of the Interstate Commerce Commission denying in part related applications of Hilt to purchase the operating rights of West Suburban Motor Express, Inc. Among other things, these rights authorize the transportation of candy, steel, machinery, food and automotive equipment within a fifty mile radius of Melrose Park, Illinois as well as from any point outside that area for any shipper within the same. Seven carriers protested the application. The Administrative Law Judge found that West Suburban's operations were not dormant within the fifty mile base area but were dormant outside thereof; and, further, that the "[p]rotestants will not be materially adversely affected by such a grant of authority herein, especially since the irregular

route service of the vendee is essentially different from the general freight operations of the protestants."

These findings by the Administrative Law Judge were in part modified by the Commission which approved the transfer only as to Cook, DuPage and Kane Counties, together with Will County, which was included because a public need was shown for such service. The Commission found that West Suburban's authority was dormant in the remaining counties approved by the Administrative Law Judge— DeKalb, Grundy, Kendall, Kankakee, Lake and McHenry. However, it did not enter findings essential to its holding of dormancy; on the contrary, it adopted the findings and conclusions of the Administrative Law Judge, one of which was that the "protestants will not be materially adversely affected by such a grant of authority." Under the cases of the Commission itself, we are therefore obliged to reverse.

In a long series of cases, the Commission has consistently held that harm to protesting carriers is a necessary prerequisite to a finding of dormancy. As early as 1958, it held that the concept of dormancy was formulated to protect "other carriers which have been required to expand their carrier facilities in order to take up the vacuum" created by the loss of service of the dormant authority. *King's Van & Storage, Inc.—Pur.—Millard*, 75 M.C.C. 582, 585 (1958). This concept was approved in *Arrow Transportation Co. v. United States*, 300 F.Supp. 813 (D.C.R.I.1969), where dormancy was defined as "an abandonment or termination of services the reactivation of which will result in damages either to the public interest or to intervening or protesting carriers who conducted operations during the interruption of said services." At 818. This definition has been accepted by the Commission and applied in numerous cases. *Holme Freight Lines, Inc.—Control*, 116 M.C.C. 874, 880 (1975); *Roadway Exp. Inc.—Control and Merger—Atlas*, 122

---

* The Honorable Tom C. Clark, Associate Justice (Retired) of the Supreme Court of the United States is sitting by designation.

M.C.C. 333, 335 (1976). Under these cases, the Commission must find that: (1) there has been an abandonment or termination of services; and (2) the reactivation of service will damage either the public interest or protesting carriers who conducted operations during the interruption of service. Here the Commission failed to find any damage to either the public interest or to a protesting carrier which would be caused by a reactivation of service. Indeed the finding of the Administrative Law Judge—which the Commission did not disturb—was that "protestants will not be materially adversely affected by such a grant of authority herein . . ." The burden is on the protestant to establish the manner in which it would be injured, the particular traffic it would lose as the result of reactivation or other harm that would ensue. *Roadway Exp. Inc.—Control and Merger—Atlas, supra,* at 338.

The Commission asserts that it thoroughly analyzed protestors' evidence of harm from the proposed service and concluded that, "as restricted," the protestants would not be harmed. But this is not to find that harm would result to the protestors in the six remaining counties. The only possible harm, as articulated by the Commission, that might result is that since the protestors: "had authority to serve those counties and were able to expand operations in those six Illinois counties" where Hilt sought to offer service, they might be foreclosed from doing so. This possibility of harm is much too remote. The protestors have had such authority but have not exploited it. No reason has been given as to why they have allowed their authority to lie asleep. In the meanwhile, the public has suffered. Hilt wishes to activate this service. We believe that such a protest is not only too little but is too late. As a second string to their bow, the Commission says that where new service is involved, the new applicant must come forward with evidence of public need and cannot rely on allegations that protestors have not submitted positive proof of diversion of traffic. But this is not *new* service since authority already exists covering its traffic;

what the Commission has done is to employ the theory of dormancy to destroy the authority of Hilt to handle this traffic under its purchase from West Suburban. The Commission cannot disregard its own precedents but must reasonably explain an alternation of policy. *Greater Boston Television Corp. v. F. C. C.,* 143 U.S.App.D.C. 383, 444 F.2d 841, 852 (1970), *cert. den.* 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971); *National Association of Food Chains, Inc. v. I. C. C.,* 535 F.2d 1308 (D.C.Cir.1976). The Commission has failed to do so here and we are compelled to reverse.

The same reasoning applies on West Suburban's operations outside the fifty mile base area. Neither the Commission nor the Administrative Law Judge found that reactivation in that area would damage either the public interest or the protesting carriers. It follows that the finding of dormancy outside the fifty mile base area must also be reversed.

It is so ordered.