NEVADA PUBLIC SERVICE COMMISSION; WHEELER TRUCKING CORPORATION; SIERRA RENTAL & TRANSPORT; PIONEER TRUCKING & AGGRE-GATES; AND W.E.S. TRUCKING, INC., APPELLANTS, v. VEGAS ROCK & SAND, INC., AND LAS VEGAS PAVING CORPORATION, RESPONDENTS.

No. 22254

August 20, 1992                          836 P.2d 630

[Rehearing denied June 2, 1993]

*Leslie T. Miller,* General Counsel, Carson City, for Appellant Nevada Public Service Commission.

*Allison, MacKenzie, Hartman, Soumbeniotis & Russell,* Carson City, for Appellants Wheeler Trucking Corporation, Sierra Rental & Transport, Pioneer Trucking & Aggregates, and W.E.S. Trucking, Inc.

*D. Lanny Waite,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

### Facts

Vegas Rock & Sand, Inc. (Vegas Rock) and Las Vegas Paving Corporation (Las Vegas Paving) sought to transfer a Certificate of Public Convenience and Necessity (the certificate) from Vegas Rock to Las Vegas Paving. During the transfer hearings, the intervenors, local trucking companies which objected to the transfer, called no witnesses to support their position. The only witnesses to appear on behalf of the Commission were its staff employees, who testified that the certificate should be transferred in full for the following reasons: (1) for the five years prior to the transfer hearing, Vegas Rock primarily hauled petroleum products with only minimal loads of other goods; (2) during this five-year period, the amount of business for Vegas Rock was decreasing, and the company had recently emerged from bankruptcy proceedings; and (3) from 1985 to 1989, Vegas Rock

lacked the requisite tariff to haul goods other than petroleum-based products.[1]

On May 4, 1990, the Public Service Commission of Nevada (the Commission) approved the transfer but restricted the certificate to the hauling of only petroleum products. The Commission found that: (1) Vegas Rock's historical operations were limited and that, except for petroleum hauling, those operations were dormant; (2) Las Vegas Paving planned to expand Vegas Rock's historical operations and revive the dormant operating rights; and (3) the planned expansion would harm the public interest by diverting $1.6 to $3.2 million away from existing motor carriers.

Vegas Rock and Las Vegas Paving, dissatisfied with the restriction to petroleum products, appealed to the district court, which vacated and set aside the opinion and order of the Commission. The district court concluded that the Commission: (1) had not demonstrated a "required public interest"; (2) had failed to recognize the operations of Vegas Rock from 1987 to 1988, when the general commodities tariff was not in effect, because the operations were under "color of law"; (3) had failed to recognize the operations of Vegas Rock while under a management agreement; (4) had failed to recognize the statutory definition of dormancy and had mistakenly declared that the general commodities operations of Vegas Rock were dormant; and (5) had failed to recognize that in order to show harm to the public interest, the intervenors must testify that their operations will be damaged.

On appeal, the Commission argues that: (1) the district court improperly substituted its judgment for that of the Commission as to the weight of the evidence on questions of fact; (2) substantial evidence supports the determinations of the Commission made pursuant to NRS 706.6411; and (3) the Commission acted properly in modifying the operating authority transferred.

### Discussion

Pursuant to NRS 706.6411(5), the Commission can only restrict the transfer of a certificate "as the public interest may require." In Arrow Transportation Company v. United States, 300 F.Supp. 813 (D.R.I. 1969), the court noted that under the federal scheme of trucking regulations, even if the operations of a carrier seeking to transfer a certificate are minimal or non-existent prior to the transfer request, to restrict a certificate the regulatory authority must find that sufficient harm to the public

---

[1]Pursuant to the regulatory scheme of Nevada, a carrier is required to file schedules and tariffs for a specific commodity or class of commodity which he wishes to haul in addition to holding a "Certificate of Public Convenience and Necessity" authorizing the hauling of the commodity. See NRS 706.321 and 706.386.

interest or to the protesting carriers would result. *Id.* at 818. The court noted:

> [T]his court finds dormancy to mean an abandonment or termination of services the reactivation of which will result in damages either to the public interest or to intervening or protesting carriers who conducted operations during the interruption of said services.

*Id. See also* Hilt Truck Line, Inc. v. United States, 548 F.2d 214, 215-16 (8th Cir. 1977). Also, in Central Transportation, Inc.-Pur.-Piedmont Petroleum, 127 M.C.C. 284 (1977), the Interstate Commerce Commission (ICC) used a test that established that dormant rights can be transferred so long as the applicant can show a benefit to the public interest in allowing the transfer. The ICC established a scheme that shifted the burden of proof once certain elements were proven. *Id.* at 286-287. The ICC stated:

> The tripartite test requires the applicant to bear the initial burden of showing a public benefit to be gained from the sale of the dormant rights. This initial showing must merely indicate that the transfer will in some manner improve transportation service to the public. In an unopposed case, this evidence is sufficient proof of a public benefit to warrant a transfer of the rights. In an opposed case, the burden of going forward shifts to the protestants (once applicants meet their initial burden) who are required to show that there is a probability that they will be *significantly harmed* by the transfer. If this burden of proof is met, the burden of going forward shifts once more to the applicant, who is required to bring forth evidence of sufficient public need to outweigh this harm, ordinarily in the form of shipper support.

*Id.* (emphasis added).

In accordance with this line of cases, we determine that for the Commission to restrict a certificate of transfer, even if the operations of the transferor are minimal or non-existent, it must demonstrate the probability of significant harm to the public interest or to the protesting carriers.

The Commission argues that the certificate was properly restricted because Las Vegas Paving's planned expansion of Vegas Rock's historical operations would harm the public interest by diverting $1.6 to $3.2 million away from existing motor carriers. However, this fact alone does not show what the projected impact will be to a specific carrier or to the industry as a whole. Such a diversion of revenue from all existing motor carriers might have a de minimis effect on the industry. Significant harm to the protesting carriers or the public interest was not established at the transfer hearing. Therefore, we conclude that

although the Commission determined the operations of Vegas Rock were "dormant" prior to the transfer hearing, the Commission did not make a sufficient showing of probable harm to the public interest or to the protesting carriers to justify restricting the certificate.

### Conclusion

Because neither the Commission nor the intervenors have demonstrated what impact the expanded service of Las Vegas Paving or the loss of revenue by the other carriers will have on the protesting carriers, we are not persuaded that the protesting carriers or the public interest will be adversely affected by revival and transfer of the allegedly dormant rights. Therefore, we conclude that the district court properly reversed the decision of the Commission. Because we have determined that the district court had at least one basis to reverse the decision of the Commission, we make no determination on the other issues on appeal. Accordingly, we affirm the judgment entered below.