**EAGLE MOTOR LINES, INC., a Corporation, Plaintiff,**

v.

**UNITED STATES of America and the Interstate Commerce Commission, Defendants,**
and
**Home Transportation Company, Inc., Intervenor.**

**Civ. A. No. 71–8.**

United States District Court,
N. D. Alabama, S. D.

Sept. 9, 1971.

Jack J. Hall, McDaniel, Hall & Parsons, Birmingham, Ala., Robert M. Pearce, Pearce, Amato & Hurst, Bowling Green, Ky., for plaintiff.

Richard W. McLaren, Asst. Atty. Gen., and John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., Wayman G. Sherrer, U. S. Atty., Birmingham, Ala., for the United States.

Fritz R. Kahn, Gen. Counsel, and John F. Fryer, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

Arthur M. Toback, Washington, D. C., Robert E. Born, Atlanta, Ga., and William S. Pritchard, Jr., Pritchard, McCall & Jones, Birmingham, Ala., for Home Transportation Co.

Before GEWIN, Circuit Judge, and LYNNE and McFADDEN, District Judges.

## PER CURIAM.

Positing jurisdiction and venue upon the provisions of 49 U.S.C.A. §§ 305(g), 306(a) and 307(a), 5 U.S.C.A. §§ 701 et seq., and 28 U.S.C.A. §§ 1336, 1398, 2284, and 2321 to 2325, inclusive, plaintiff, Eagle Motor Lines, Inc., brought this action to enjoin, annul and set aside in part a report and orders of the Interstate Commerce Commission in Docket No. MC–73165 (Sub–No. 264), Eagle Motor Lines, Inc., Extension—Jefferson County, Alabama.

On April 7, 1969, plaintiff filed with the Interstate Commerce Commission (Commission) an application, later amended, seeking a certificate of public convenience and necessity, which would authorize it to operate in interstate or foreign commerce as a common carrier by motor vehicle over irregular routes transporting described machinery and equipment between points in Alabama and elsewhere in the nation.

The Commission did not grant in its entirety the application of plaintiff. Instead, it granted authority to transport only a portion of the commodities plaintiff sought to transport, and limited the points from which plaintiff could perform service on inbound traffic. Plaintiff does not here complain of that action.

With great vigor, plaintiff contends that the action of the Commission in imposing a no-tacking restriction[1] in the certificate issued to plaintiff on June 22, 1970, was not based upon any evidence in the record, and was therefore arbitrary, capricious and so unreasonable as to constitute an abuse of discretion.

Repeatedly, this Court has adverted to the generous discretion with which the Commission is invested in asserting questions of public convenience and necessity and the narrow scope of judicial review.[2]

In its verified application, plaintiff denied that the authority sought therein can or will be joined with any operating authority then held.[3] Recitals in the no-

---

1. Restriction: Restricted against the joinder by applicant with any other authority now held by it in order to perform a through service.

2. E. g., Malone Freight Lines v. United States, 107 F.Supp. 946, 949 (N.D.Ala. 1952), aff'd 344 U.S. 925, 73 S.Ct. 497, 97 L.Ed. 712, and Floyd and Beasley Transfer Company v. United States, 256 F. Supp. 23 (N.D.Ala.1966).

3. VI(b) If irregular-route authority is sought, indicate whether the authority here sought can or will be joined with any operating authority applicant now holds, or seeks in a pending application, so as to permit the performance of a through service by applicant to, from, or between points not included in this application. Yes ___. No ___. If the answer is YES and joinder or tacking is intended, indicate the points or areas where the physical

tice of plaintiff's application, published in the Federal Register, were consistent with assurances given in the application.[4]

Terse excerpts from the specially concurring opinion of Judge Rives in Baggett Transportation Co. v. United States, 206 F.Supp. 835 (N.D.Ala.1962) quoted in the margin,[5] while appearing in a somewhat different context, have a peculiar pertinency here.

Failure adequately to warn competing carriers of the authority actually sought and intended to be used, albeit by tacking, naturally has an injurious impact upon the integrity of the administrative process.

■ We are of the opinion that under the circumstances to which we have referred, the Commission acted well within its discretion in declining to require that protestants demonstrate the actual adverse effect of tacking through abstracts or specific references to diversions of traffic.

■ Since we conclude that the action of the Commission in imposing the restriction complained of was not capricious or arbitrary, that it did not constitute an abuse of discretion and that it did no violence to some established principle of law, an order will be entered dismissing this action.

operation would connect and the territory that would be served through such joinder.

And applicant's response thereto was as follows: Not applicable.

4. No. MC 73165 (Sub-No. 264), filed April 7, 1969, Applicant: EAGLE MOTOR LINES, INC., 830 North 33d Street, Post Office Box 1348, Birmingham, Ala. 35201. Applicant's representative: Robert M. Pearce, Post Office Box E, Bowling Green, Ky., 42101. Authority sought to operate as a common carrier, by motor vehicle, over irregular routes, transporting: (1) Material handling equipment, (2) Machinery and equipment used in the wood products, forestry, particle board, composition board and hard board industries, (3) Parts, attachments and accessories for the commodities described in (1) and (2) above, between points in Jefferson and Talladega Counties, Alabama and Washington County, Oreg., on the one hand, and, on the other, points in the United States (except Alaska and Hawaii). NOTE: Applicant states it does not intend to tack, and apparently is willing to accept a restriction against tacking if warranted. If a hearing is deemed necessary, applicant requests it be held at Washington, D.C. Federal Register, Vol. 34, No. 83, p. 7203—Thursday, May 1, 1969.

5. "The Commission must be able to rely upon the representations of the parties * * *," and

"However, when Baggett made its application for the transfer with the representations contained in that application, it became bound to them."