**ARKANSAS–BEST FREIGHT SYSTEM, INC., an Arkansas corporation, et al., Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

**Red Ball Motor Freight, Inc., et al., Intervenors.**

No. FS–72–C–65.

United States District Court,
W. D. Arkansas,
Fort Smith Division.

Nov. 7, 1972.

Donald E. Cross, of Rea, Cross, Knebel, Washington, D. C., for Johnson.

Maurice F. Bishop, of Bishop & Carlton, Birmingham, Ala., for Bowman.

Jerry C. Prestridge, of Clark, Thomas, Harris, Denius & Winters, Austin, Tex., for Red Ball.

Courts Oulahan, of Rhyne & Rhyne, Washington, D. C., for Lorch-Westway.

Robert L. Jones, Jr., of Jones, Gilbreath & Jones, Ft. Smith, Ark., local counsel for Johnson, Bowman & Lorch-Westway.

Fritz R. Kahn, Gen. Counsel, Seymour Glanzer, Washington, D. C., for ICC.

Bethel B. Larey, U. S. Atty., Ft. Smith, Ark., for United States.

## OPINION

JOHN E. MILLER, Senior District Judge.

The above named plaintiffs filed their complaint herein October 4, 1972, against the above named defendants, praying this court to temporarily restrain and preliminarily enjoin the Interstate Commerce Commission from issuing Certificates of Public Convenience and Necessity in the implementation of its Orders dated December 30, 1971 (Exhibit 1 to the complaint) served January 24, 1972, and dated September 1, 1972 (Exhibit 5 to the complaint), served September 6, 1972, in its Docket Nos. MC–2229 (Sub-No. 132), Red Ball Motor Freight, Inc. [Red Ball]; MC–94201 (Sub-No. 56), Bowman Transportation, Inc. [Bowman]; and MC–106401 (Sub-No. 18), Johnson Motor Lines, Inc. [Johnson], all embraced in the consolidated proceeding under Docket No. MC–1124 (Sub-No. 206), Herrin Transportation Company, as set forth in detail in the complaint herein.

The plaintiffs also prayed that the court issue a temporary restraining order to remain in force and effect until the hearing and determination by the full court to prevent the I.C.C. from enforcing its report and orders and to sus-

Harper, Young & Smith, Fort Smith, Ark., Butler, Snow, O'Mara, Stevens & Cannada, Jackson, Miss., Robert E. Joyner, Joyner, Goff & Sims, Memphis, Tenn., Robinson, Felts, Starnes & Nations, Austin, Tex., Reeder, Dysart, Sanders & Taylor, Kansas City, Mo., Christopher, Bailey & Taylor, Fort Worth, Tex., Turney & Turney, Rice, Carpenter & Carraway, Washington, D. C., for plaintiffs.

pend the effectiveness of the said report and orders pending final hearing and determination of this action.

Subsequent to the commencement of the action the above named intervenors were permitted to intervene.

On October 10, 1972, Hon. M. C. Matthes, Chief Judge of the U. S. Courts of Appeals for the Eighth Circuit, designated a three-judge court to determine and hear the action.

On October 19, 1972, the court by order set the cause for a hearing on November 1, 1972, at Fort Smith, Ark., on plaintiffs' application for a temporary restraining order.

Prior to the hearing, eminent and experienced counsel for the parties served and submitted briefs in support of their respective contentions.

The questions involved were extensively and thoroughly argued orally, and at the conclusion of the hearing the application was submitted and taken under consideration for determination by the court.

At the hearing and in support of the application for a temporary restraining order, the plaintiffs Arkansas-Best Freight System, Inc. [ABF], Yellow Freight System, Inc., Roadway Express, Inc., and Roadway Express, Inc., of Mississippi, Campbell Sixty-Six Express, Inc., Gordons Transports, Inc., ET&WNC Transportation Co., Mercury Motors, Inc. [Mercury], Red Line Transfer & Storage Co., Inc., and Mercury Freight Lines, Inc., introduced affidavits duly executed by qualified officers. The intervenors, Red Ball, Bowman and Johnson, introduced affidavits duly executed in opposition to the application.

The court has jurisdiction over the subject matter and parties to entertain the instant action and to grant the relief sought, 28 U.S.C.A. §§ 1336, 1398, 2284, 2321–25. Two of the plaintiffs, namely, ABF and Mercury, maintain their principal offices and places of business within the Western District of Arkansas,

Fort Smith Division, and venue is granted by 28 U.S.C.A. § 1398.

■ Title 28, U.S.C.A. § 2284(3), provides that any case in which an application for injunction is made the district judge to whom the application is made may at any time grant a temporary restraining order to prevent irreparable damage. The full text of the subsection is as follows:

"(3) In any such case in which an application for an interlocutory injunction is made, the district judge to whom the application is made may, at any time, grant a temporary restraining order to prevent irreparable damage. The order, unless previously revoked by the district judge, shall remain in force only until the hearing and determination by the full court. It shall contain a specific finding, based upon evidence submitted to such judge and identified by reference thereto, that specified irreparable damage will result if the order is not granted."

Subsection (5) specifically provides "any one of the three judges of the court may perform all functions, conduct all proceedings except the trial, and enter all orders required or permitted by the rules of civil procedure." Thus, a single district judge has power to issue a temporary restraining order suspending the effectiveness and operation of an order of the I.C.C.

■ The sole question now before the court is whether or not the evidence and the law entitle the plaintiffs to a temporary restraining order suspending the operation of the I.C.C.'s orders pending a final hearing and determination of this action pursuant to 28 U.S.C.A. § 2284(3). The orders of the I.C.C. are entitled to initial respect and the Commission is presumed .to have properly performed its official duties. This presumption supports its action in the absence of clear evidence to the contrary. " * * * however, the order must be supported by substantial evidence and must be made within the statutory lim-

its placed upon the Commission's powers by Congress." Braswell Motor Freight, Inc. v. United States (S.D.Miss.1969) 297 F.Supp. 215, 218.

In Baggett Transportation Co. v. Hughes Transportation, Inc. (8 Cir. 1968) 393 F.2d 710, the court at page 714 said:

"First, we make the general observation that the granting of a temporary injunction is addressed to the discretion of the trial court and not that of the appellate court. The merits of the case will not be considered excepting only as their consideration may be necessary to determine whether the trial court ' * * * improvidently exercised its judicial discretion.' 7 Moore Federal Practice, § 65.04 [2] at 1630–31; Benson Hotel Corp. v. Woods, 8 Cir., 1948, 168 F.2d 694."

In Eastern Air Lines, Inc. v. Civil Aeronautics Board (2 Cir. 1958) 261 F.2d 830, the court at page 830 said:

"The Court of Appeals for the District of Columbia has recently held in Virginia Petroleum Jobbers Association v. Federal Power Commission, 104 U.S.App.D.C. 106, 259 F.2d 921, that stay of an order of an administrative agency may be granted when the following conditions are met:

"(a) Where the petitioner is likely to prevail on the merits of its appeal;

"(b) Where the petitioner has shown that without a stay it will suffer irreparable injury;

"(c) Where there is no substantial harm to other interested persons; and

"(d) Where the public interest will not be harmed."

In Middlewest Motor Freight Bureau v. United States (8 Cir. 1970) 433 F.2d 212, the court by Judge Gibson at page 241 said:

"The case most clearly setting out these standards for a temporary stay of a Commission order is Virginia Petroleum Jobbers Assn. v. Federal Pow-er Commission, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958):

" '(1) Has the petitioner made a strong showing that it is likely to prevail on the merits of its appeal? * * * (2) Has the petitioner shown that without such relief, it will be irreparably injured? The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. * * * (3) Would the issuance of a stay substantially harm other parties interested in the proceedings? On this side of the coin, we must determine whether, despite showings of probable success and irreparable injury on the part of petitioner, the issuance of a stay would have a serious adverse effect on other interested persons. Relief saving one claimant from irreparable injury, at the expense of similar harm caused another, might not qualify as the equitable judgment that a stay represents. (4) Where lies the public interest? In litigation involving the administration of regulatory statutes designed to promote the public interest, this factor necessarily becomes crucial.' 259 F.2d at 925."

A temporary restraining order is normally issued to maintain the status quo, the last status which preceded the pending controversy. Westinghouse Electric Corp. v. Free Sewing Machine Co. (7 Cir. 1958) 256 F.2d 806, 808; Interstate Commerce Commission v. Hudson Transportation Co. (S.D.N.J.1959) 174 F.Supp. 373, 376.

In the case of Benson Hotel Corp. v. Woods (8 Cir. 1948) 168 F.2d 694, the court at page 696 said:

"As has been observed this is an appeal from an interlocutory judgment granting a preliminary injunction. Such an injunction is preliminary to a hearing on the merits. The application for such an injunction does not

involve a final determination on the merits; in fact, the purpose of an injunction pendente lite is not to determine any controverted right, but to prevent a threatened wrong or any further perpetration of injury, or the doing of any act pending the final determination of the action whereby rights may be threatened or endangered, and to maintain things in the condition in which they are in at the time and thus to protect property or rights from further complication or injury until the issues can be determined after a full hearing. An application for a temporary injunction is addressed to the discretion of the trial court and not to the discretion of the appellate court, and ordinarily the appellate court on appeal from such an order will not consider the merits of the case further than is necessary to determine whether the trial court exceeded its discretion in making the order. [Citing cases.] Such a temporary injunction should usually be granted where the questions presented are grave and injury to the moving party will result if it is denied and the final determination should be in his favor, while if it is granted and the decision is unfavorable the inconvenience and loss to the opposing party will be inconsiderable. Ordinarily, the court in its discretion may grant a preliminary injunction where it appears that there is a substantial controversy between the parties and that one of them is committing an act or threatening the immediate commission of an act that will cause irreparable injury or destroy the status quo of the controversy before a full hearing can be had on the merits of the case, and generally such an injunction will be granted whenever necessary to the orderly administration of justice." (Citing cases.)

On page 573 of Exhibit 1 to the complaint, the Commission in its report said:

"These proceedings involve eight applications by the same number of motor common carriers to extend their general commodities operations to points generally in that portion of the United States west of Atlanta, Ga., Birmingham, Ala., and Pensacola, Fla., and east of Houston, Dallas, and Fort Worth, Tex. Bowman Transportation, Inc., seeks to extend its operation, in addition to points in the above-described area, to Topeka, Kans., and to Kansas City, Mo.-Kansas City, Kans. The authority sought in each application is fully described in appendix A to this report. With the exception of Deaton, Inc. (which requests irregular-route authority), *each applicant has applied for regular-route authority which it proposes to join with the authority it presently holds.* * * *

* * * * * *

"These applications were heard on a consolidated record, involve what is perhaps the most extensive record ever developed in connection with a single group of motor carrier application proceedings before this Commission, and were the subject of a single report and recommended order by two examiners. The examiners recommended that all of the applications be denied." (Emphasis added.)

On page 575 the following statement appears:

"The evidence, the recommendations of the hearing examiners, and the pleadings have been considered. Inasmuch as no exception is taken to the examiners' summary of the evidence presented by the protestants as to their authorities, equipment, and operations, this portion of the examiners' report is hereby adopted and is set forth in appendix G to this report."

In sum and substance the contention of the plaintiffs is that if the challenged orders are permitted to be implemented, the entire transportation system in a great many states will be disrupted and great injury will flow therefrom not only to the present operators but to the public in general.

The purpose of the National Transportation Policy as declared by the Congress, 54 Stat. 899, 49 U.S.C. note preceding § 1, is:

" * * * to provide for fair and impartial regulation of all modes of transportation * * *, so administered as to recognize and preserve the inherent advantages of each; to promote safe, adequate, economical, and efficient service and foster sound economic conditions in transportation and among the several carriers; to encourage the establishment and maintenance of reasonable charges for transportation services, without unjust discriminations, undue preferences or advantages, or unfair or destructive competitive practices; * * * all to the end of developing, coordinating, and preserving a national transportation system by water, highway, and rail, as well as other means, adequate to meet the needs of the commerce of the United States, * * *. All of the provisions of this Act, [chapters 1, 8, 12, 13, and 19 of this title] shall be administered and enforced with a view to carrying out the above declaration of policy."

Specifically the three carriers, Red Ball, Bowman and Johnson, contend that the plaintiffs have not and cannot satisfy the criteria for the entry of an order restraining the issuance and implementation of the certificates, and that each of them has expended large sums of money in anticipation and preparation for the implementation of the orders.

■ The Commission is not bound by the findings of the hearing officers and is free to reach conclusions upon the evidence contrary to those of its examiners.

■ The evaluation of the evidence must be in accordance with the mandate of Congress and within the statutory limits of the Commission's power. See, Braswell Motor Freight, Inc. v. United States, supra.

■ The Commission must disregard any testimony which would produce "un-just discriminations, undue preferences or advantages, or unfair or destructive competitive practices."

On August 20, 1971, the shippers filed supplemental exceptions dated March 24, 1970, to the report and order of November 19, 1969, recommended by the hearing examiners. On October 8, 1972, they filed a motion for leave to intervene herein, to which the plaintiffs objected, but the court on November 1, 1972, by order allowed the intervention to be filed.

The plaintiffs contend that the Commission applied one yard stick, rule or treatment in determining the weight to be given to the same evidence that was before the hearing examiners, and also to similar evidence on behalf of the plaintiffs. This contention is one that might properly arise upon a hearing on the merits of the case, but not on the question now before the court.

In Allied Van Lines Co. v. United States (C.D.Cal.1969) 303 F.Supp. 742, the court at page 746 said:

"The position has been consistently taken by the Federal courts that orders of the Interstate Commerce Commission should not be set aside, modified or disturbed by judicial review if they are supported by findings which are neither capricious nor arbitrary, are adequately sustained by the record as a whole, and there is a rational basis for the administrative conclusion. Illinois C. R. Co. v. Norfolk & W. R. Co., 385 U.S. 57, 69–70, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966); Stanislaus County v. United States, 236 F.Supp. 146, 148 (N.D.Cal.1964). Yet while the scope of judicial review is limited, the court is bound to inquire into the proceedings conducted by the Commission to determine if there is a rational basis for the conclusions approved by the administrative body. Nashua Motor Express, Inc. v. United States, 230 F.Supp. 646 (D.N.H.1964)."

In Schaffer Transportation Co. v. United States, 355 U.S. 83, 78 S.Ct. 173,

2 L.Ed.2d 117, the court at page 176 of 78 S.Ct. said:

"The National Transportation Policy, formulated by Congress, specifies in its terms that it is to govern the Commission in the administration and enforcement of all provisions of the Act, and this Court has made it clear that this policy is the yardstick by which the correctness of the Commission's actions will be measured. Dixie Carriers, Inc. v. United States, 351 U. S. 56, 76 S.Ct. 578, 100 L.Ed. 934; Eastern-Central Motor Carriers Ass'n v. United States, 321 U.S. 194, 64 S. Ct. 499, 88 L.Ed.2d 668; McLean Trucking Co. v. United States, 321 U. S. 67, 64 S.Ct. 370, 88 L.Ed. 544. Of course, the Commission possesses a 'wide range of discretionary authority' in determining whether the public interest warrants certification of any particular proposed service. United States v. Detroit & Cleveland Navigation Co., 326 U.S. 236, 241, 66 S.Ct. 75, 77, 90 L.Ed. 38; Interstate Commerce Commission v. Parker, 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051. But that discretion must be exercised in conformity with the declared policies of the Congress. To see whether those policies have been implemented we look to the Commission's own summary of the evidence, and particularly to the findings, formal or otherwise, which the Commission has made. Just as we would overstep our duty by undertaking to evaluate the evidence according to our own notions of the public interest, we would shirk our duty were we summarily to approve the Commission's evaluation of the record without determining that the agency's evaluation had been made in accordance with the mandate of Congress."

The effect of the implementation of the report and orders provided for in this proceeding would be to permit the institution of a direct, single line service by (a) Red Ball between its currently authorized points in 11 southwestern and southern states; (b) Bowman between its currently authorized points in 19 states; and (c) Johnson between its currently authorized points in 18 states.

The direct and vital interest of plaintiffs and other protestants in this matter arise from the interstate operating authority granted to each of them by the I.C.C. which substantially duplicates that granted to Red Ball, Bowman and Johnson in this proceeding.

The court has considered all the pleadings together with the affidavits, the written briefs and oral argument of counsel in support of their respective contentions and is convinced that plaintiffs have met all of the established criteria necessary for the issuance of the requested temporary restraining order.

The plaintiffs have established that they are likely to prevail on the merits.

In United Parcel Service v. United States, (S.D.N.Y.1969) 1969 Fed.Cas. ¶ 82,084, Judge Tyler explained the injustice and impossibility of imposing such a requirement stating:

" * * * Third, it is argued as a matter of law that the plaintiffs here and now 'must show that they will prevail on the merits * * *.' I am not totally impressed by any of these arguments.

"Taking up the legal point first, I believe that the ICC and RSD have flagrantly overstated the governing legal principle here. It is perfectly true that a temporary restraining order against the enforcement of the order of an administrative agency is a rather drastic remedy not freely granted by a federal district court. Stott v. United States, 154 F.Supp. 389, 391 (S.D.N.Y.1957). Plainly, however, the courts have never required that plaintiffs upon a preliminary application for a stay establish that they definitely will prevail on the merits. If the law were to this effect, it would make no sense to include in the statute, as Congress did, provisions for a single judge to consider applications of this kind. The real point here, in my view, is that this court should con-

sider, among other things, the likelihood of success by plaintiffs in these proceedings * * *."

In G. B. C., Inc. v. United States (E.D.Tenn.1969) 302 F.Supp. 1283, 1284, the court said:

"The Court notices judicially that a carrier serving a particular market is apt to undergo a more rigorous hardship if confronted with new competition than are carriers which are granted new authority in the same market. This is supported by the elements of damage and loss suggested by the conclusions of the plaintiff's president aforementioned. Further, the pleadings and appendices herein demonstrate that a division of the defendant Commission drew diametrically opposed conclusions herein on the basis of the same evidence, or substantially the same evidence, North American Van Lines, Inc. Ext.—Overall (1968), 750 M.C.C. 751, 753, upon which the examiner recommended a different result. Thus, this Court grants the stay on this showing of what has been described as ' * * * quantitative substantiality * * *.' American Crystal Sugar Co. v. Cuban-American S. Co., D.C.N.Y. (1958), 143 F.Supp. 100, 102."

The plaintiffs have shown that without a stay they will suffer irreparable injury. If the Certificates of Public Convenience and Necessity are issued to Red Ball, Bowman and Johnson under the authority granted in the orders questioned in this proceeding, those carriers will immediately proceed to provide service to the public in accordance with the provisions of the orders. This will necessarily cause a diversion from plaintiffs of substantial volume of traffic which they are now handling and revenue derived therefrom and inflict an irreparable injury on the business of the plaintiffs which can never be recouped even if they should prevail on the merits of the action.

There is absolutely no proof in the present record to establish that any substantial harm will come to any other interested persons by the granting of a stay. This is true notwithstanding the intervention of the shippers hereinbefore referred to. The public interest will not be harmed. On the other hand, the public interest will be protected by preventing "undue preferences or advantages or unfair or destructive competitive practices."

The court, in the consideration of the question, has not overlooked the contention of Red Ball, Bowman and Johnson that they have expended large sums of money in preparation of meeting the new obligations that will be imposed upon them by the orders of the Commission, but these firms had ample notice that the present complaint would be filed. Prior to September 13, 1972, Mr. William O. Turney, an attorney of 2201 Mass. Avenue, N.W., Washington, D.C., advised the Commission that a proceeding would be instituted challenging the orders of the Commission in this matter, and on September 13, 1972, Mrs. Betty Jo Christian, Associate General Counsel, advised all parties that the issuance of the certificates would be withheld until October 6 in order to give the protestants an opportunity to file their complaint and to obtain a hearing thereon. Therefore, any money that was expended by Red Ball, Bowman and Johnson was spent at their own risk and they cannot be heard to complain on that ground.

Under the facts established by the plaintiffs, they should not be required to post an indemnity bond in connection with the issuance of a temporary restraining order.

In Florida East Coast Railway Co. v. United States (M.D.Fla.1964) 228 F.Supp. 340, Judge Simpson at page 343 said:

"If it was the intent of Congress that bond be required in statutory three-judge cases, Title 28 U.S.C. § 2324 and § 2284(3) could very simply have had included with them a statute similar to Title 15 U.S.C. § 26 (Section 16 of the Clayton Act), providing

that the execution of a bond for damages be required in private anti-trust suits. The absence of such a provision in the statutory three-judge procedure is persuasive that the posting of an indemnity bond should not be required here as an incident to the issuance of a temporary restraining order."

See, also, Tennessee Public Service Comm. v. United States (W.D.Tenn. 1967) 275 F.Supp. 87, 91.

Therefore, an order is being entered today restraining the I.C.C. from implementing the orders herein complained of.