**ARKANSAS–BEST FREIGHT SYSTEM, et al., Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

**Bowman Transportation, Inc., Intervening-Defendant.**

**No. FS–72–C–65.**

United States District Court,
W. D. Arkansas,
Fort Smith Division.

Sept. 2, 1975.

Thomas Harper and Don A. Smith, Harper, Young & Smith, Ft. Smith, Ark., Phineas Stevens, Jackson, Miss., Frank W. Taylor, Jr., and Wentworth E. Griffin, Kansas City, Mo., for plaintiffs.

Thomas E. Kauper, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Fritz R. Kahn, Gen. Counsel, ICC, Richard H. Streeter, Atty., ICC, Washington, D. C., Robert E. Johnson, U. S. Atty., Ft. Smith, Ark., for defendants.

Robert L. Jones, Jr., Jones, Gilbreath & Jones, Ft. Smith, Ark., Maurice F. Bishop, Bishop, Sweeney & Colvin, Birmingham, Ala., for intervenor, Bowman Transportation Co.

Before HENLEY, Circuit Judge, WILLIAMS, Chief District Judge, and MILLER, Senior District Judge.

JOHN E. MILLER, Senior District Judge.

## OPINION ON REMAND

Involved in the prior decision of September 11, 1973, of this court, 364 F. Supp. 1239, was the review of orders of the Interstate Commerce Commission ("the Commission") granting certificates of public convenience and necessity

to Red Ball Motor Freight, Inc., Johnson Motor Lines, Inc., and Bowman Transportation, Inc. (Bowman). The Commission authorized the named carriers to extend their operations as common carriers of property over specified routes in the southeastern and southwestern portions of the United States.

On November 7, 1972, this court entered an order temporarily restraining the Commission from issuing certificates of public convenience and necessity pending final hearing and determination of the action. *Arkansas-Best Freight System v. United States*, (W.D.Ark. 1972) 350 F.Supp. 539. The court at page 546 said:

"The plaintiffs have shown that without a stay they will suffer irreparable injury. If the Certificates of Public Convenience and Necessity are issued to Red Ball, Bowman and Johnson under the authority granted in the orders questioned in this proceeding, those carriers will immediately proceed to provide service to the public in accordance with the provisions of the orders. This will necessarily cause a diversion from plaintiffs of substantial volume of traffic which they are now handling and revenue derived therefrom and inflict an irreparable injury on the business of the plaintiffs which can never be recouped even if they should prevail on the merits of the action."

In due time the case was fully briefed and orally argued. On September 11, 1973, the court filed its opinion holding that the orders of the Commission extending the operations of Red Ball, Johnson and Bowman were invalid and enjoined the enforcement thereof. 364 F.Supp. 1239.

On appeal, *Bowman Transportation, Inc.. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 95 S.Ct. 438, 42 L. Ed.2d 447, the Supreme Court on December 23, 1974, reversed and remanded. Rehearing denied February 24, 1975.

The Court upheld the Commission's grant of certificates to Red Ball and Johnson. It also upheld the grant of a certificate to Bowman insofar as it involved authority embraced within its application, but remanded for our further consideration the issue involving the Commission's grant of authority to Bowman that "exceeded that set forth in Bowman's application."

Relative thereto, the Supreme Court in Section V of its opinion stated:

"Our opinion disposes of appellees' objections to the Commission's order insofar as it granted the applications of Johnson and Red Ball. As to appellant Bowman, however, an issue remains. In granting Bowman a certificate the Commission noted that the authority sought by Bowman exceeded that set forth in Bowman's application. The 'excess' was granted, subject to a condition precedent of publication in the Federal Register of Bowman's request for the excess authority. Various appellees filed objections to the augmented authority sought by Bowman, which the Commission overruled. Appellees challenged the Commission's procedure in the District Court on a variety of grounds, and though the District Court indicated disapproval of the Commission's action, the court did not have to rule on the merits of appellees' objections since it set aside the Commission's approval of all the applications.

"While we have on occasion decided residual issues in the interest of an expeditious conclusion of protracted litigation, see *Consolo v. FMC*, 383 U. S. 607, 621 [86 S.Ct. 1018, 16 L.Ed.2d 131], we believe that the issue of conformity of the Bowman certificate to its application is one for the District Court. The issue was not briefed or argued here, owing to the limitations set forth in our order noting probable jurisdiction. And while the District Court spoke of the Commission's action in this regard, we do not construe its expressions as a final ruling, since they were unnecessary to the District Court's disposition of the case. Ac-

cordingly, the issue remains open on remand.

"We hasten to add, however, that our remand provides no basis for depriving Bowman of authority conferred by the Commission that was within its original application."

On March 5, 1975, this court in accordance with the mandate of the Supreme Court entered an order dissolving the injunction previously entered enjoining the issuance of the certificates of public convenience and necessity to Johnson and Red Ball.

On March 25, 1975, the court considered paragraph V of the opinion of the Supreme Court, and entered the following order:

"IT IS ORDERED, THAT, pursuant to the decision and mandate of the Supreme Court of the United States in 73-1055, *Bowman Transportation, Inc. vs. Arkansas-Best Freight System, Inc., et al.,* the permanent injunction previously rendered by this Court enjoining the issuance of a certificate of public convenience and necessity to Bowman Transportation, Inc. be and is hereby modified and partially dissolved to permit the issuance of a certificate of public convenience and necessity *conforming* to the Order of the Interstate Commerce Commission in Herrin Transportation Co., Extension —Atlanta, Georgia, 114 M.C.C. 571, except that said authority shall pending judicial determination of the issues specifically preclude the tacking, joining or combining of said authority granted in 114 M.C.C. 571 to that authority granted in Bowman Transportation, Inc.—Purchase (Part)—Alabama Highway Express, Inc., decided July 8, 1968 in No. MC–F–9921, and shall further be restricted so as to preclude any authorization in said authority for service by Bowman Transportation, Inc. of the junction of U. S. Highways 11 and 80 and Interstate Highway 59 at or near Toomsuba, Mississippi for any purpose or the in-

cluding of Montgomery, Alabama in the restrictive language.

"IT IS FURTHER ORDERED, THAT, this Court shall retain jurisdiction of this matter for the purpose of determining the issues of whether or not the authority granted in 114 M.C.C. 571 shall be permanently retricted to preclude the tacking, joining or combining of said authority granted in Bowman Transportation, Inc.—Purchase (Part)—Alabama Highway Express, Inc., decided July 8, 1968 in No. MC–F–9921, and shall further be restricted so as to preclude any authorization in said authority for service by Bowman Transportation, Inc. of the junction of U. S. Highways 11 and 80 and Interstate Highway 59 at or near Toomsuba, Mississippi for any purpose or the including of Montgomery, Alabama in the restrictive language.

"This Court also retains jurisdiction on issues relating to the costs taxed by the Supreme Court."

All adjudicated costs have been paid by plaintiffs.

The Bowman application is thus before the court for review on the limited issue set forth in the order of remand.

All parties have filed extensive briefs and orally argued their contentions, all of which together with applicable portions of the pleadings have been carefully considered by the court.

Counsel for the United States and Bowman state that the limited issue involves the question "Whether the Commission's grant of authority greater than that initially proposed by a motor carrier applicant after finding a public need therefore and after republication of the enlarged grant and consideration of objections thereto is lawful and correct." They also contend that this court should limit its consideration to only one portion of the authority granted by the Commission that exceeded the authority requested in the application. This court does not agree that its review is so lim-

ited. It is only necessary to read and keep in mind what the Supreme Court said in section V of its opinion as hereinbefore set forth in full.

The plaintiffs [1] contend that the grant to Bowman clearly and materially exceeded the authority that it described and set forth in its application.

At the beginning of the hearing Bowman proposed an amendment to its application which reduced rather than enlarged the scope of its application. The amendment was accepted by plaintiffs and approved by the Commission.

In considering the issue as stated by the Supreme Court in its remand, we have given careful consideration to the principles discussed and applied by the Supreme Court in its review of this court's prior decision. We have endeavored to give to the Commission's order every possible presumption of correctness and to resolve every ambiguity in a way that would support the conclusions of the agency. [2]

In this court's opinion of September 11, 1973, the court, beginning at page 1255 of 364 F.Supp. said:

"The grant to Bowman, exceeding the scope of its application, was described in a Federal Register notice affording interested parties an opportunity to petition for reopening or reconsideration of that application. Several carriers, including ABF, filed timely petitions in response to the notice, based upon their interests in the Bowman grant, seeking reopening or reconsideration of the Division decision. These petitions pointed out that, while the application was pending Bowman acquired extensive new authority, and the approved grant failed to contain any restriction preventing Bowman from performing service between points in this newly-acquired territory and points within its new grant. Since the original notice of the Bowman application specifically described its proposal to join its *then existing* authority with that sought, petitioners sought an opportunity to demonstrate the need for a modification or denial of the Bowman grant. These petitions were considered along with numerous petitions seeking reconsideration of the Division order. A total of 32 separate groups of petitions and replies thereto, some exceedingly comprehensive, were denied by a two-to-one vote of the same Division twelve working days after the last pleading was filed. (See Exhibit 5 to Complaint.)"

At page 1263 the court further stated:

"The Division's rejection of the petition of ABF and others, seeking reopening and reconsideration of the Bowman application, does not appear compatible with the Federal Register notices describing such application. * * * The additional publication of the Bowman grant was thereby treated as a meaningless formality."

The above findings of this court are correct and based upon the undisputed facts disclosed by the entire record.

In the joint brief of the USA and the Commission the defendants contend that the Commission's decision to grant Bowman "excess" authority by including Montgomery in the gateway restriction subject to the condition precedent of republication in the Federal Register is lawful and correct; that as a matter of law republication in the Federal Register prior to the issuance of a certificate

---

1. In addition to Arkansas-Best Freight System, Inc., the following plaintiffs, ET&WNC Transportation Co., Gordons Transports, Inc., Mercury Motors Inc., Red Line Transfer and Storage Co., Inc., T.I.M.E.–DC, Inc., Transcon Lines, Yellow Freight System, Inc., and the intervening plaintiff, Jack Cole-Dixie Highway Co., served and submitted briefs to the Commission in the various proceedings that affected their business.

2. At the time of the court's original decisions, Sept. 11 and Oct. 4, 1973, Circuit Judge Mehaffy was a member of the court. Following his retirement, Circuit Judge Henley was duly appointed to succeed Judge Mehaffy.

of public convenience and necessity, to advise interested parties that the Commission, upon finding a public need therefor, intends to grant authority beyond that originally noticed in the Federal Register, satisfies all notice and due process requirements, and that as a question of fact the republication of the Federal Register notice to reflect the Commission's grant of authority to Bowman to serve Montgomery, Ala., as a gateway was natural and correct, and the issue of whether Bowman may tack the certificates obtained in the instant proceeding with those purchased from Alabama Express is not properly before the court.

█ Counsel for defendants have called the court's attention to the testimony of several witnesses that described the movement of freight to and from Montgomery. This testimony was proffered primarily in support of some other carriers whose applications were heard on the consolidated record and was not specifically presented in support of any proposal by Bowman to serve Montgomery or to utilize the Montgomery gateway. The record shows that Bowman clearly explained at the outset of the hearing that it did not seek such authority in reference to Montgomery, and this proffered testimony would have been irrelevant to any issue presented by the application. However, in a proceeding of this type the Commission may properly consider all evidence of record regardless of which applicant was responsible for the presentation of such evidence.

(1) The Commission granted excess authority to Bowman to serve points on the Montgomery route and to use Montgomery as a gateway, and (2) it failed to include in its restrictions a provision that would prevent Bowman from joining newly acquired authority with the authority acquired by Bowman subsequent to the hearing herein by purchase from Alabama Highway Express.

█ This court has concluded that by giving to the Commission's finding every possible presumption of correctness

and by interpreting the findings in the light most favorable to the Commission, it can uphold the Commission's grant described as in (1) above, but not that described as (2). This conclusion is reached upon the fact that the Commission found "since the need has been shown for the use of this gateway, these defects will be cured subject to prior publication in the Federal Register." 114 M.C.C. at pages 611–12.

We now come to a consideration of the contention that Bowman may tack the authority obtained in the instant proceeding with that purchased from Alabama Highway Express. The defendants contend that the question is not before this court and that the plaintiffs are attempting to broaden the issue which was defined by the Supreme Court in its order of remand.

In the order remanding the case, the court, after stating that the issue remains as to applicant Bowman, stated:

"In granting Bowman a certificate the Commission noted that the authority sought by Bowman exceeded that set forth in Bowman's application. The 'excess' was granted, subject to a condition precedent of publication in the Federal Register of Bowman's request for the excess authority. * * * and though the District Court indicated disapproval of the Commission's action, the court did not have to rule on the merits of appellees' objections since it set aside the Commission's approval of all the applications."

The court further said:

"We hasten to add, however, that our remand provides no basis for depriving Bowman of authority conferred by the Commission that was within its original application."

As stated by the Supreme Court, this court did not determine the question now before us in its former opinion. The court examined the record to a certain extent and made certain findings of fact but did not state any conclusion on the particular question now before the

court. In its consideration the court said:

"Unless restricted voluntarily or by order of the ICC, a carrier normally can tack newly granted authority with that which it already holds, or with that subsequently acquired. Bowman limited its intention to tack the authority sought in the present proceeding to its then existing authority by the use of the following language as published in the Federal Register of Thursday, August 19, 1965, by stating ' * * * with that authority previously granted * * * wherein applicant is authorized to serve points in * * * ' and named sixteen (16) states and the District of Columbia. The States of Illinois, Indiana and Ohio were not named in the Federal Register publication. The published language constitutes a specific limitation regarding tacking which did not give notice to the public of any intention to tack the authority sought in the present proceedings to authority subsequently acquired. Subsequent to the publishing of the 'Notice,' Bowman acquired Alabama Highway Express which allowed Bowman to serve points in Indiana, Illinois and Ohio. The grant of the authority in the present proceeding by the Commission, Division I, did not contain the limitation against tacking of the authority acquired in the present proceeding."

Most of the plaintiffs filed a petition similar to that of ABF for leave to intervene, to reopen and receive additional evidence, to reconsider and reverse the decision of Division I, on both the question of the use of Montgomery as a gateway and the tacking of the authority obtained in this proceeding, Sub 56, and authority that might be, or is, subsequently obtained.

Bowman filed its application for authority on June 12, 1965, in Docket MC 94201, Sub-nom 56. The initial notice was published in the Federal Register August 19, 1965. Division I on December 30, 1971, found, as evidenced by order served January 24, 1972, that present and future convenience and necessity required operation by Bowman as a common carrier of general commodities, with the usual exceptions, over certain designated routes. The republication of the revised notice appeared on February 24, 1972, at pp. 3935–36 of the Federal Register. In the republication of the notice the following statement appears:

"Because it is possible that other persons who have relied upon the notice of the application as published, may have an interest in and would be prejudiced by the lack of proper notice of the authority described in the findings in this order, a notice of the authority actually granted to applicant will be published in the Federal Register and issuance of a certificate in this proceeding will be withheld for a period of 30 days from the date of such publication, during which period any proper party in interest may file a petition to reopen or for other appropriate leave setting forth in detail the precise manner in which it has been so prejudiced."

On November 1, 1967, Bowman caused to be published in Docket MC–F–9921 its notice for authority to purchase the operating rights of Alabama Highway Express. The purchase was consummated sometime in the month of October 1968. By virtue of this purchase Bowman was authorized to serve points in Indiana, Tennessee, Illinois and Ohio.

Bowman attached to its brief filed herein July 7, 1975, a map which shows in yellow the authority possessed by it prior to the beginning of the instant proceeding. In black is shown the Sub 56 authority acquired in the present proceeding. Shown in green is the area acquired from Alabama Highway Express situated in the States of Indiana and Illinois.

A comparison of the ABF map with the Bowman map shows that now as a result of the grant in Sub 56 Bowman can handle traffic originating and des-

tined to the States of Texas, Louisiana, Mississippi and Arkansas on the one hand, and parts of Illinois, all of Ohio, and all of Indiana on the other.

It will be readily noted that the granting of the tacking privilege to Bowman would enable it to transport commodities in direct competition with ABF and other carriers as to points above mentioned by new authority not heretofore existing, and thus subject ABF in particular to competition by diverting from it traffic which is necessary to enable it to properly maintain and render adequate service to the public. The authority granted Bowman in Sub 56 directly conflicts with the authority held by ABF and other protestants as described opposite the granting numbered paragraphs in the Federal Register.

The plaintiff ABF, pursuant to certificate of convenience and necessity MC–29910 and subs thereof, was and is operating in and between the States of Arkansas, Louisiana, Pennsylvania, Texas, Mississippi, New York, Tennessee, Kentucky, Oklahoma, Kansas, Missouri, Iowa, Wisconsin, Indiana, Ohio, Georgia, North Carolina and South Carolina. During the time the original and substituted applications were before the Commission ABF owned and operated a total of at least 559 road tractors and 918 road trailers, and in addition owned and operated 797 units of city pickup and delivery vehicles.

In the petition to reopen the proceedings ABF and the other plaintiffs alleged that ABF was prepared to demonstrate to the Commission that as a result of the grant of authority in Sub 56 as republished over fifty percent of its tonnage and revenues would be subject to diversion, and that the Commission did not understand that the grant of Sub 56 to Bowman would authorize service that was not and could not have been contemplated at the time evidence was introduced during the hearings on the application; that by virtue of its acquisition subsequent to the taking of the testimony in Sub 56, Bowman would be granted excess authority without having introduced any evidence of public convenience and necessity.

In support of the petition to reopen the protestants contended that because of the material change in the republication of the notice that the Commission should reopen the matter and that Bowman should be required to prove by competent evidence establishing a public convenience and necessity to authorize operations which are in conflict with the operations described in the original notice and the other protesting carriers as shown in the entire record.

In the alternative, ABF prayed that the Commission restrict the authority granted to Bowman to preclude the handling of traffic between the points on routes in Sub 56 on the one hand and on the other to all points and places in the States of Illinois, Indiana and Ohio.

In the prior opinion of this court we commented only on the terminology used in the Federal Register notice setting forth the scope of the application. The "previously granted" authority did not authorize Bowman to operate in the States of Ohio, Indiana and Illinois. On remand we have examined the question in more detail. There is nothing ambiguous in the application or in the notice describing the proposal.

[4] Defendants have argued that plaintiffs should have protected their interests by opposing Bowman's application to purchase from Alabama Highway Express authority to operate in the States of Ohio, Indiana and Illinois. The contention is without merit and is completely answered by the record and especially by a comparison of the publication of the original notice and the republication.[3]

3. During the preparation of this opinion, the writer, by letter of August 19, requested counsel for the parties "to supply me immediately with the title of each decision cited by them in the oral argument with the exception, of course, of the decisions that are

■ ■ We can find no way in which judicial approval can be given to the Commission's grant of the excess tacking authority. The requisites for a lawful grant of authority greater than that proposed in the application are (1) a finding supported by substantial evidence of a public need therefor; (2) republication of the enlarged grant so as to afford interested parties adequate notice thereof; and (3) consideration of objections thereto following republication. The absence of the establishment of each of the requisites results in depriving the person or corporation of due process.

Plaintiffs and any other interested parties were entitled to rely on the representations contained in the application. *Baggett Transportation Co. v. United States,* (N.D.Ala.1962) 206 F.Supp. 835; *Eagle Motor Lines, Inc. v. United States* (N.D.Ala.1971) 331 F.Supp. 80. In the latter case the court at page 82 said:

"Terse excerpts from the specially concurring opinion of Judge Rivers in *Baggett Transportation Co. v. United States,* 206 F.Supp. 835 (N.D.Ala. 1962) quoted in the margin, [5] while appearing in a somewhat different context, have a peculiar pertinency here.

"Failure adequately to warn competing carriers of the authority actually sought and intended to be used, albeit by tacking, naturally has an injurious impact upon the integrity of the administrative process."

The note 5 referred to states:

"5. 'The Commission must be able to rely upon the representations of the parties * * *,' and

" 'However, when Baggett made its application for the transfer with the representations contained in that application, it became bound to them.' "

In *Georgia-Florida-Alabama Transportation Co. v. United States,* (M.D. Ala.1968) 290 F.Supp. 764, the Commission granted authority to the defendant M. R. & R. which it did not seek in its application. In the original application and of which notice appeared in the Federal Register it sought authority to transport general commodities with exceptions between Mobile, Alabama, and Pensacola, Florida, serving no intermediate points.

At page 765 the court said:

"The plaintiffs protested. At the outset of the hearing M. R. & R. amended its application by stipulation with the protestants with these remarks:

" 'Mr. Examiner, at this point the Applicant will offer an amendment to the application in the nature of a restriction which we deem will reduce the scope of it and which incorporates some restrictions already existing and the restrictions we offer at this time are in these words: "Authority sought to be restricted against traffic moving in direct or interline service (1) Mobile and Pensacola; (2) Mobile and Jacksonville and (3) Mobile and Atlanta."

" 'If I may, by way of explanation say this: the original restriction that we had proposed with respect to between Mobile and Pensacola and Mobile and Jacksonville as appeared in the notice was intended by us to cover all traffic whether it was direct or interline. In other words, Applicant didn't propose any service between these two points, that is, between Mobile and Pensa-

listed and set forth in the briefs." The attorney for Bowman, Mr. Bishop, referred us to the following: *Cedar Rapids Steel Transportation, Inc., v. ICC,* D.C., 391 F.Supp. 181 (1975); *Midwest Coast Transport, Inc., v. United States,* D.C., 391 F.Supp. 1209 (1975); *Baltimore and Ohio Railroad Co. v. United States,* D.C., 391 F.Supp. 249 (1975); *American Federation of Labor, etc., et al. v. Brennan,* D.C., 390 F.Supp. 972 (1975); *Nader v. Sawhill,* 514 F.2d 1064 (Em.App.1975); *Cross v. United States,* 4 Cir., 512 F.2d 1212 (1975).

The plaintiff referred us to the decisions which we approve and discuss in our opinion.

cola and Mobile and Jacksonville. Now, what we have done, we have added another one between Mobile and Atlanta, another restriction and made it clear that the service proposed will not incompass any service on the shipments directly between the two points or interline at the two points.' "

At page 766 the court said:

"The I.C.C. subsequently, and without giving notice to the protestants, to the public, or any further notice in the Federal Register, removed the stipulated restrictions which had been accepted and honored by the Hearing Examiner.

"The plaintiffs contend that the grant of authority by the I.C.C. in excess of that sought contrary to the stipulation and amendment under these circumstances is error.

"The defendants contend the I.C.C. may grant authority to a motor carrier broader than that requested by the carrier without notice to protestants or the public or without republication in the Federal Register."

\*      \*      \*      \*      \*      \*

"The I.C.C. has differentiated between a grant of authority between two terminals without tacking and the grant of authority between terminals which tack and has indicated such tacking constitutes a grant in and of itself as different and separate, a grant distinct from a grant where tacking does not occur. *'Our failure to impose a restriction to prevent tacking* (Emphasis added.) with the other authority previously held by applicant would have *exactly the same effect as a grant* (Emphasis added.), therefore, we will impose a restriction against tacking.' Tompkins Motor Lines, Inc.—Extension—Louisville, 95 M.C.C. 472, 481.

"To state it another way, where tacking occurs on a new grant, two grants actually take place: (1) a grant of authority between the two terminals and (2) a grant of authority from a new terminal to all the other areas brought into being by the tacking to a terminal which the applicant already serves under a previous grant. A much graver situation comes into being where tacking occurs and no restrictions are made against interlining. In this case, by reason of the removal of the restrictions contained in the application, the gateways have been opened both east to west, Atlanta and Jacksonville to Mobile, and west to east, Mobile to Atlanta and Jacksonville, involving numerous competing carriers. Thus, the additional grant by reason of tacking and the removal of the restriction constitutes a grant not contemplated by the application which could adversely and materially affect the operation of other authorized carriers. The I.C.C. has noted the seriousness of such circumstances:

" 'In appropriate circumstances restrictions against interline and tacking at origin and/or destination points have been imposed. These instances evolve when grants of authority are tied closer to the applicants existing operations and where tacking and interchange would result in additional competitive operations which are not contemplated and which *would adversely and materially affect* the operation of other authorized carriers. Riss and Co., Inc., Ext—Dakota County, Nebr., 102 M.C.C. 336, 343. On occasion, the service restriction may also be allowed for such *compelling reasons* as the agreement of the parties that protestants would be *materially and adversely* affected by their omission. No. MC–61755 (Sub-No. 20), Northern Haulers, Corporation Extension—St. Lawrence County, N.Y.' (Emphasis added.) Fox-Smythe Transportation Co., Ext—Oklahoma, 106 M.C.C. 1, 18.

"The stipulated restrictions, recognized and honored by the Hearing Examiner, and the withdrawal or inaction thereafter by the protestants *implies a recognition* by all that the proceeding without the restriction *could materially and adversely affect* the protestants. Notice to interested persons and their right to bè heard are basic concepts of justice under law. It would be manifestly unfair and unjust to these plaintiffs and other interested parties for this court to permit them to be lulled into a false sense of security, protection, and inaction by allowing the Commission to remove the restrictions in the amended application without the interested parties and the public having been given notice by publication in the Federal Register so they could be heard."

The court then discussed cases where the Commission had broadened the grant of authority beyond that sought in the application, and on page 768 said:

"Without approving, but noting these cases, we should not extend the practice of broadening a grant of authority over that sought beyond these limited instances to a case with the extensive ramifications of the case at bar."

In *May Trucking Co. v. United States*, (D.Idaho 1968) 290 F.Supp. 38, the court at page 39 said:

"It is undisputed that the Commission erroneously issued a certificate to plaintiff granting interstate authority to plaintiff greater and different in scope than that applied for by plaintiff, and likewise greater than that indicated in the notice of application printed in the Federal Register.

"By and through the Order appealed from, the Commission seeks to correct its admitted error and grant to the plaintiff the authority which plaintiff sought in its application. Plaintiff contends the Commission does not have the authority to correct such an error. We do not agree. We are of the opinion that the Commis-

sion has the power to correct its manifest error by canceling the outstanding certificate issued to plaintiff and reissuing a modified certificate granting the operating rights originally applied for by the plaintiff. The record before us clearly shows that the Commission has correctly exercised such power."

In *Curtis, Inc. v. United States* (D. Colo. July 21, 1975) (not published), a three-judge court said:

"In this action Curtis seeks an order setting aside and annulling orders of the ICC entered in the Commission's proceeding No. MC–113678 (Sub-No. 285), Curtis, Inc., Extension —Meats Over Irregular Routes. The specific order which is attacked is the modification by the Commission of the certificate theretofore issued, Sub-No. .285, which modification imposed a no tacking restriction.

"The problem arose out of proceedings which started in 1967, at which time Curtis filed an application for new operating authority to transport over irregular routes. Curtis at that time held regular route authority to serve these points. This application was not designed, according to the application, to duplicate authority already given but, rather, to supplement it. Curtis did answer the question in the application regarding whether the authority sought could be tacked with the response 'Yes.' However, Curtis declined in further responses to indicate the points or areas where the operation would connect and the territory to be served by such joinder. It referred in an appendix to other and additional authority. In the notice in the Federal Register no reference was made to the tacking possibilities raised by the application.

"The issuance of the Sub-285 authority was opposed by Ringsby Truck Lines, Inc., Midwest Emery Freight System, Inc. and Little Audrey's Transportation Company, Inc., but the tacking issue was never raised ex-

pressly. This opposition was withdrawn when Curtis gave assurance that it sought no new territory or commodity authority. One carrier, Frozen Food Express, Inc., specifically opposed the tacking, but withdrew its objection after correspondence with Curtis' counsel."

\*    \*    \*    \*    \*    \*

"Finally, in February 1974, the certificate was reissued with a no-tacking restriction. The sole question presented on this review is, as we view it, whether the Commission was empowered to modify its original order in order to correct any mistake. We conclude that it was so authorized. We further conclude that the Commission's ruling after the cause was re-opened was fully supported."

\*    \*    \*    \*    \*    \*

"As we view the situation at bar the Commission acted within the law. It had a clear right to correct the mistake which occurred in connection with the initial grant of authority by imposing the limitations against tacking, and we perceive no necessity for the existence of fraud or deception. To hold otherwise would give to Curtis and unfair advantage based upon mutual mistake of fact. Unquestionably the opposition carriers would have vigorously objected to the issuance of the Sub-285 authority had they known that it was to be used in the manner in which it was used following its issuance. We perceive no error in the Commission's subsequent proceedings and we see no necessity for specifically considering the conduct of these hearings."

## CONCLUSIONS

The Supreme Court in its opinion of December 23, 1974, granted to Bowman all operating authority embraced within the scope of its application as filed and presented to the Commission. By our decision today we hold that Bowman should be granted only the excess authority for which the Commission found from legal and competent evidence a public need existed.

We set aside as invalid only that portion of the Commission's order that granted Bowman excess authority that was and is not supported by any evidence of public need and in regard to which there was no finding of any public need.

Accordingly, judgment is being entered today modifying our order of March 25, 1975, so as to authorize the Commission to issue a certificate of public convenience and necessity to Bowman Transportation, Inc., as authorized by the Commission in the action under review, with a modification restricting such authority to preclude the tacking or joining of such authority with the authority acquired by Bowman from Alabama Highway Express, Inc., pursuant to the Commission's order of July 8, 1968, in No. MC–F–9921.